[No. C040094. Third Dist. June 3, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
JAREY STEWART, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, II, III, IV, V and VII of the Discussion.

164

**COUNSEL**

Maribeth Halloran, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, John G. McLean and George M. Hendrickson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HULL, J.**—Defendant was convicted by a jury of three counts of lewd and lascivious conduct (Pen. Code, § 288, subd. (a)), one count of aggravated lewd and lascivious conduct (Pen. Code, § 288, subd. (b)(1)), and one count of aggravated sexual assault (Pen. Code, § 269, subd. (a)(4)). He was sentenced under both the one strike law (Pen. Code, § 667.61, subd. (b)) and the three strikes law (Pen. Code, § 667 subds. (b)–(i)) to three consecutive indeterminate terms of 15 years to life, each tripled to 45 years to life (Pen. Code, § 667, subd. (e)(2)(A)(i)). A fourth indeterminate term of 15 years to life, tripled to 45 years to life, was ordered to be served concurrently. Sentence for the remaining offense was stayed pursuant to Penal Code section 654. He also received determinate terms of five years for a prior serious felony conviction (Pen. Code, § 667, subd. (a)) and one year for a prior prison term (Pen. Code, § 667.5, subd. (b)). Defendant's aggregate term was thus 135 years to life, plus six years.

Defendant appeals, claiming (1) violation of his Sixth Amendment right to counsel, (2) violation of his Fifth Amendment right not to testify, (3)

instructional errors, and (4) sentencing errors. We conclude that the matter must be remanded for resentencing but otherwise affirm the judgment.

FACTS AND PROCEEDINGS

The offenses charged in this matter occurred in September and October 2000. At the time, defendant was living with E. and her two daughters, 10-year-old S. and four-year-old M. Defendant was 43 years old and is M.'s father.

On September 3, 2000, while E. was away at work, defendant told the girls to take off their clothes while he videotaped them. He continued to videotape the girls as they ran around the house and later took a bath. At one point on the video, defendant tickled S., touching her breasts and her buttocks. At another point, defendant forced M. to sit on his lap. Both defendant and M. were naked. Defendant told the girls not to tell their mother about the videotape, because it was going to be a surprise for her.

On October 1, 2000, E. was again away at work and defendant and S. were in defendant's bedroom watching television. M. was asleep in her room. Defendant told S. to take off her clothes in an "urging" voice and, after she did so, he told her to lie down and began rubbing lotion on her. She obeyed because she was scared and thought defendant might hit or do something else bad to her. Defendant told S. to relax, that he always did this to her mother. Defendant rubbed her arms, legs and chest. Later, defendant began licking her vagina. After about five seconds, S. began pushing defendant's head away. Defendant continued to orally copulate her for two or three minutes; she told him three times to stop.

Defendant then told S. to take a shower. She did so and when she stepped out of the shower, she found defendant in the bathroom with her. Defendant told her that if she did not tell her mother what he had done, he would buy her any compact disk she wanted; she declined. Defendant then asked if he could rub lotion on her again, but she said no. She then put on her clothes and went to sleep.

The next morning, S. told her mother what had happened. E. asked defendant what he had done and defendant responded, "It just happened." E. asked defendant if he wanted to spend the rest of his life in prison and he asked her to "just let [him] go." E. reported the matter to the police. While at the police station, E. called defendant at home and asked him about the incident. The telephone conversation was recorded and later played to the jury. During the conversation, defendant admitted licking S.'s vagina and telling her that he did this to her mother. Defendant said this was the only time he did it and that he was ashamed.

Two weeks after calling the police, E. discovered the videotape that defendant had made of the girls on September 3. Portions of the tape were played to the jury.

Defendant was charged with one count of aggravated sexual assault (Pen. Code, § 269, subd. (a)(4)), one count of lewd and lascivious conduct (Pen. Code, § 288, subd. (a)), and one count of aggravated lewd and lascivious conduct (Pen. Code, § 288, subd. (b)) in connection with the October 1 incident with S. He was charged with two counts of lewd and lascivious conduct in connection with the September 3 taping. Defendant was also charged with two prior serious felony convictions.

Defendant was found competent to stand trial and entered pleas of not guilty and not guilty by reason of insanity. During the initial stages of the proceedings, defendant requested to be permitted to represent himself with cocounsel. The court denied the request. Defendant then elected to represent himself and asked to have counsel appointed in an advisory role. The court denied this request as well, but ordered standby counsel for defendant.

At the guilt phase of the proceedings, defendant testified on his own behalf, explaining that during the September 3 taping, he did not intend to appeal to the sexual desires of either himself or the girls. Regarding the October 1 incident, defendant testified that he had taken several pain medications that day. He said he was a nurse and had been trained to give massages. He massaged S. as he had been trained to do. After defendant finished the massage, he sat down at the end of the bed. He then heard E.'s voice say "go ahead," which is what she said when they were going to have sex. Defendant started to orally copulate S., thinking she was E.. It was not until defendant heard S. say stop that he realized who she was. He said to S., "You tricked me. How did you do that?"

Defendant also presented the testimony of a registered nurse regarding the side effects of the various medications defendant claimed to have taken.

Defendant was convicted on all counts. The prior conviction charges were then tried to the jury and were found true.

At the sanity phase, defendant presented the testimony of a nurse at the county jail, who had written a report indicating defendant had obvious psychological problems. She further clarified on the stand that defendant had "behavioral problems." Dr. Janice Nakagawa testified that defendant suffered from a "personality disorder," but that defendant knew what he was doing at the time and could tell right from wrong and predict the consequences of his actions. Dr. Shawn Johnston testified that defendant suffers from a character

flaw that causes him to make trouble for others or himself. However, according to Dr. Johnston, none of these character flaws would have kept defendant from understanding what he was doing or from distinguishing right from wrong. However, neither of these psychological experts was qualified to assess the effects on defendant of the several medications that he claimed to have taken at the time of the October 1 incident.

Defendant again testified on his own behalf, indicating that he had signs and symptoms of temporal lobe epilepsy, schizophrenia, and multiple personality complicated by medications. Defendant testified that he "can sometimes catch glimpses of ghosts when they come" because he is "hypersensitive, kind of like a person with ESP." He indicated that he has "shown the signs and symptoms of a person with severe depression which may be characterized by bipolar disorder or manic depression." Defendant considered himself insane in October 2000 because his perception of reality was different from that of others. He explained that he went into a "dream-like state" about an hour before the molestation as a result of the medications he had taken.

The jury found defendant sane with respect to all five counts. He was thereafter sentenced as indicated previously.

### DISCUSSION

### I–V*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### VI

### *One Strike Law Sentencing*

As earlier summarized, defendant was convicted on count II of lewd or lascivious acts with a child under the age of 14 by use of force (Pen. Code, § 288, subd. (b)(1)) and sentenced, pursuant to Penal Code section 667.61, subdivision (b) to an indeterminate term of 15 years to life, tripled under the three strikes law (Pen. Code, § 667, subd. (e)(2)(A)(1)) to 45 years to life. Identical terms were imposed on three other counts, two of which (counts IV and V) were ordered to be served consecutively to the sentence on count II and one of which (count III) was ordered to be served concurrently with the sentence imposed for count II. The sentence on the remaining count (count I) was stayed pursuant to Penal Code section 654.

---

* See footnote, *ante*, page 163.

Defendant contends that use of Penal Code section 667.61 on counts I, II and III was improper. Those counts involved the three offenses committed against S. on October 1. Defendant argues that under the statute, the multiple victim provision is the only possible basis for the application of Penal Code section 667.61, but there was only one victim on October 1. He argues that the court could not bootstrap offenses committed on September 3 against multiple victims onto the charges that arose from his crimes against S. alone on October 1. We find there was no error.

■ Penal Code section 667.61 was enacted in 1994 as part of what is commonly known as the one strike law. (*People v. Rayford* (1994) 9 Cal.4th 1, 8 [36 Cal.Rptr.2d 317, 884 P.2d 1369].) Subdivision (b) of section 667.61 reads, in relevant part: "[A] person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 15 years . . . ." Penal Code section 667.61, subdivision (c) includes a violation of Penal Code section 288, subdivision (b) (Pen. Code, § 667.61, subd. (c)(4)) and Penal Code section 288, subdivision (a) (Pen. Code, § 667.61, subd. (c)(7)).

Penal Code section 667.61, subdivision (e) reads:

"The following circumstances shall apply to the offenses specified in subdivision (c):

"(1) [T]he defendant kidnapped the victim of the present offense in violation of Section 207, 209, or 209.5.

"(2) [T]he defendant committed the present offense during the commission of a burglary, as defined in subdivision (a) of Section 460, or during the commission of a burglary of a building . . . .

"(3) The defendant personally inflicted great bodily injury on the victim or another person in the commission of the present offense . . . .

"(4) The defendant personally used a dangerous or deadly weapon or firearm in the commission of the present offense . . . .

"(5) The defendant has been convicted in the present case or cases of committing an offense specified in subdivision (c) against more than one victim.

"(6) The defendant engaged in the tying or binding of the victim or another person in the commission of the present offense.

"(7) The defendant administered a controlled substance to the victim by force, violence, or fear in the commission of the present offense . . . ."

Defendant argues that all the other circumstances listed in Penal Code section 667.61, subdivision (e) address conditions relating to the "present offense" and, therefore, despite use of the phrase "case or cases" in Penal Code section 667.61, subdivision (e)(5), this circumstance should likewise be read as limited to situations where there were multiple victims of the offense or offenses for which the term of imprisonment is being imposed.

 We are not persuaded. In matters of statutory interpretation, our fundamental concern is with legislative intent. (*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406].) We determine such intent by looking first "to the words of the [enactment], giving them their usual and ordinary meaning." (*Trope v. Katz* (1995) 11 Cal.4th 274, 280 [45 Cal.Rptr.2d 241, 902 P.2d 259].) Penal Code section 667.61, subdivision (e)(5) uses the phrase "case or cases" rather than "present offense." "Where the same word or phrase might have been used in the same connection in different portions of a statute but a different word or phrase having different meaning is used instead, the construction employing that different meaning is to be favored." (*Playboy Enterprises, Inc. v. Superior Court* (1984) 154 Cal.App.3d 14, 21 [201 Cal.Rptr. 207].)

 The statutory intent and scheme of Penal Code section 667.61, subdivision (e) is not difficult to discern. Where the "present offense" against a victim is a qualifying offense and the gravity of that offense is enhanced by one of the circumstances enumerated in subdivision (e)(1), (2), (3), (4), (6), or (7), the life sentence mandated by the statute shall apply. But even in circumstances where the subdivisions enumerated above do not apply, if a qualifying offense has been committed against more than one victim, the criminal conduct is considered equally severe and that conduct merits application of the statute so long as those offenses are prosecuted "in the present case or cases." (Pen. Code, § 667.61, subd. (e)(5).)

We note that a single sex "offense" typically involves, and is charged as, a single criminal wrong against a single victim. Where a defendant commits two sexual wrongs against a single victim, he has committed two "offenses." Where a defendant commits an offense against two victims, he has committed two "offenses." If we were to accept defendant's interpretation of Penal Code section 667.16, subdivision (e)(5) as applying only where there are multiple victims "in the present offense," this circumstance would rarely, if ever, exist. For example, given defendant's interpretation of the statute, subdivision (e)(5) would not apply to the offenses committed against S. *and* M. on September 3, even though defendant had multiple victims on that occasion,

because defendant was charged with one offense for a lewd act against S. and another offense for a lewd act against M.

In any event, we must assume that the Legislature knew the difference between an "offense" and a "case" and meant what it said. That is especially true where, as here, the sentencing scheme makes perfect sense.

We find support for our holding in *People v. Jones* (1997) 58 Cal.App.4th 693 [68 Cal.Rptr.2d 506], in which matter the defendant went on a month-long robbery spree during which, when the opportunity arose, he sexually assaulted his victim. He was convicted of 17 offenses arising out of four separate incidents and sentenced to 63 years eight months to life in state prison, including four terms under the one strike law. (*Id.* at p. 698.) The information had alleged 4 one-strike circumstances: aggravated kidnapping with respect to one victim; simple kidnapping with respect to another; deadly weapon use; and multiple victims. The Court of Appeal concluded, among other things, that the defendant was properly sentenced under the one strike law pursuant to the multiple victim circumstance, even though there was only one victim in each of the separate offenses. (*Id.* at pp. 709–712; see also *People v. Wutzke* (2002) 28 Cal.4th 923, 927, 944 [123 Cal.Rptr.2d 447, 51 P.3d 310] [one strike sentences proper for four offenses committed on different occasions against two victims].)

■ The result is the same here. Even though there was only one victim on October 1, there were multiple victims of defendant's criminal acts and the offenses against each of those victims were tried together in the present case. The one strike law applies to all of the charged offenses.

Defendant nevertheless contends that the application of Penal Code section 667.61 to the offenses committed on October 1 violates his Fourteenth Amendment right to equal protection. He argues that such application is only possible because the prosecutor chose to try the October 1 and September 3 offenses together. According to defendant, he "is similarly situated to any defendant who is being tried separately for offenses committed on two different occasions" but was sentenced more harshly.

"Broadly stated, equal protection of the laws means 'that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in like circumstances in their lives, liberty and property and in their pursuit of happiness.' " (*People v. Wutzke, supra*, 28 Cal.4th at p. 943.) To support an equal protection claim, a party must show "the state has adopted a classification that affects two or more similarly situated groups in an unequal manner." (*In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549], italics omitted.)

Defendant claims that he was subjected to potentially harsher sentencing because of the prosecutor's choice to try all charges in one proceeding. He claims that he was treated differently than a hypothetical defendant prosecuted in two separate proceedings who likewise committed offenses on two separate occasions, one involving multiple victims.

▮ Defendant's equal protection claim has no merit. The courts of this state have consistently held that differences in treatment of a criminal defendant based on prosecutorial discretion do not implicate equal protection. For example, the state high court has held that a prosecutor's discretion whether to seek the death penalty in a given case does not, in and of itself, give rise to equal protection concerns. (*People v. Ray* (1996) 13 Cal.4th 313, 359 [52 Cal.Rptr.2d 296, 914 P.2d 846]; *People v. Keenan* (1988) 46 Cal.3d 478, 505 [250 Cal.Rptr. 550, 758 P.2d 1081].) Likewise, in *People v. Taylor* (2001) 93 Cal.App.4th 318 [112 Cal.Rptr.2d 902], this court concluded that equal protection is not violated where a prosecutor has discretion whether to charge a firearm use enhancement under Penal Code section 12022.53 (providing a set punishment of 10 years) or Penal Code section 12022.5 (providing a range of punishments). We explained: " ' "Prosecutors have great discretion in filing criminal charges. [Citation.] This discretion includes the choice of maximizing the available sentence (including charging of enhancements) to which a defendant might be exposed in the event of conviction [citations] and the timing of filing unrelated charges [citations]. Such discretion does not violate equal protection." ' " (*People v. Taylor, supra,* at p. 323.)

In *Manduley v. Superior Court* (2002) 27 Cal.4th 537 [117 Cal.Rptr.2d 168, 41 P.3d 3], the Supreme Court found no equal protection problem in Welfare & Institutions Code section 707, subdivision (d)(1), which grants prosecutors discretion to file charges in criminal court against a minor who is at least 16 years old. The court explained that "all minors who meet the criteria enumerated in [Welfare & Institutions Code] section 707[, subdivision](d) equally are subject to the prosecutor's discretion whether to file charges in criminal court. Any unequal treatment of such minors who commit the same crime under similar circumstances results solely from the decisions of individual prosecutors whether to file against particular minors a petition in juvenile court or instead an accusatory pleading in criminal court. Although, as petitioners assert, a prosecutor's decision in this regard can result in important consequences to the accused minor, so does a decision by a prosecutor to initiate criminal charges against *any* individual, including an adult. Claims of unequal treatment by prosecutors in selecting particular classes of individuals for prosecution are evaluated according to ordinary equal protection standards. [Citation.] These standards require the defendant to show that he or she has been singled out deliberately for prosecution on the basis of some invidious criterion, and that the prosecution would not have

been pursued except for the discriminatory purpose of the prosecuting authorities. [Citation.] '[A]n invidious purpose for prosecution is one that is arbitrary and thus unjustified because it bears no rational relationship to legitimate law enforcement interests . . . .' " (*Manduley v. Superior Court, supra,* at pp. 568–569.)

■ Here, defendant does not claim that Penal Code section 667.61 contains some invidious standard for determining when separate charges will be prosecuted together. Nor does he claim he was singled out for joint prosecution of the September 3 and October 1 offenses for some invidious purpose. Defendant's equal protection claim is therefore without merit.

Finally, defendant contends that he was improperly sentenced to three life terms for the three October 1 offenses. He argues that Penal Code section 667.61, subdivision (g) authorizes only one such term "for any offense or offenses committed against a single victim during a single occasion." (Pen. Code, § 667.61, subd. (g).) Defendant argues that all three offenses were committed against a single victim, S., on a single occasion. We agree.

■ In *People v. Jones* (2001) 25 Cal.4th 98 [104 Cal.Rptr.2d 753, 18 P.3d 674], the Supreme Court analyzed the phrase "single occasion" as used in section 667.61, subdivision (g). The court rejected use of the interpretation given to the phrase "separate occasion" in Penal Code section 667.6, subdivision (d), which recognizes separate occasions whenever there is a reasonable opportunity for reflection between offenses. The court explained: "[A]pplying the reasonable opportunity for reflection analysis of Penal Code section 667.6, subdivision (d) to sentencing determinations under Penal Code section 667.61, subdivision (g) appears inconsistent with the reference by the Legislature in the latter provision to 'multiple victims during a single occasion.' In the case of a defendant who sequentially assaults multiple victims even in close temporal and spatial proximity, it would be difficult to imagine the crimes ever occurring 'during a single occasion' under Penal Code section 667.61, subdivision (g), because the perpetrator would virtually always have an opportunity for reflection when changing victims." (*People v. Jones, supra,* 25 Cal.4th at p. 106.) The court instead adopted the following rule: "[F]or purposes of Penal Code section 667.61, subdivision (g), sex offenses occurred on a 'single occasion' if they were committed in close temporal and spatial proximity." (*People v. Jones, supra,* 25 Cal.4th at p. 107.) According to the court, this rule "should result in a *single* life sentence, rather than *three* consecutive life sentences, for a sequence of sexual assaults by defendant against one victim that occurred during an uninterrupted time frame and in a single location." (*Ibid.*)

■ Under the foregoing rule, defendant may be sentenced to only one life term under Penal Code section 667.61 for the three offenses committed

against S. on October 1. Terms for the other offenses must be imposed as authorized elsewhere in the Penal Code. Of course, while the trial court here imposed three life terms for the three October 1 offenses, one term was stayed and the other was run concurrently. Thus, there will be no net effect on defendant's aggregate sentence.

## VII[*]

### *Cruel and Unusual Punishment*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The convictions are affirmed. The matter is remanded for resentencing. Following resentencing, the trial court shall amend the abstract of judgment and forward a certified copy to the Department of Corrections.

Scotland, P. J., and Davis, J., concurred.

On June 22, 2004, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied September 15, 2004.

---

[*]See footnote, *ante,* page 163.