[No. B222463. Second Dist., Div. Five. Apr. 5, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
JUAN MANUEL VALDEZ, Defendant and Appellant.

## COUNSEL

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Scott A. Taryle and Beverly K. Falk, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KRIEGLER, J.**—A jury found defendant and appellant Juan Manuel Valdez guilty of seven counts of lewd and lascivious acts upon a child in violation of Penal Code section 288, subdivision (a).[1] The three victims—Crystal (counts 1 and 2), Jessica (counts 3 through 6), and Irene (count 8)—were the grandchildren of Valdez's girlfriend.[2] As to each count, the jury found defendant committed the offense against more than one victim pursuant to the one strike law set forth in section 667.61, subdivision (b). The trial court applied the one strike law and sentenced defendant to consecutive terms of 15 years to life on counts 1, 3, 6, and 8, two of which involved Jessica, along with concurrent terms of 15 years to life for the remaining three.

In his timely appeal, defendant contends it was impermissible to impose multiple one strike sentences for convictions as to Jessica where the only aggravating circumstance was the multiple-victim factor under the applicable version of section 667.61. According to defendant, the 1998 version of the one strike law permitted the imposition of only one indeterminate term as to each victim. Alternatively, defendant contends imposition of mandatory consecutive sentences was improper under the *Estrada* rule[3] because of a 2006 amendment to section 667.61. We affirm.

### STATEMENT OF FACTS

The three victims were sisters. Defendant was the boyfriend of their grandmother. In 2001, defendant lived in the same house with the grandmother and the three sisters on Opp Street in Wilmington.

---

[1] All further statutory citations are to the Penal Code unless stated otherwise.

[2] The jury found defendant not guilty of one count of lewd and lascivious conduct against Irene.

[3] *In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948] (*Estrada*) (an amendatory statute lessening punishment is presumed to apply in all cases not yet reduced to final judgment as of the amendatory statute's effective date); see *People v. Floyd* (2003) 31 Cal.4th 179, 184 [1 Cal.Rptr.3d 885, 72 P.3d 820].

*Crystal—Counts 1 and 2*

Crystal turned eight years old in 2001. One night in April, when Crystal's mother was in the hospital giving birth, defendant followed Crystal to the girls' bedroom and closed the door behind them. When Crystal lay down on the bed, defendant pulled down her pants and underwear, removed his own pants, and penetrated her vagina with his penis, causing pain to Crystal. She kicked defendant in the face and began to cry. Defendant told her not to say anything about it or he would hit her. When her grandmother entered the room and asked why she was crying, Crystal lied and said she had hurt her finger. She was afraid to tell the truth. The following morning, Crystal saw blood on her underwear. Her vaginal area burned when she urinated.

A second incident occurred a few years later, after defendant had moved out of the home to an apartment in Wilmington. Defendant was visiting them and Crystal was sitting on the couch. When Crystal's grandmother went to the bathroom, defendant tried to put his hands under Crystal's shirt in the area of her breasts. She pushed him away and yelled for her grandmother. Defendant told the grandmother that Crystal was "just crazy." Crystal did not tell her grandmother what defendant had done because she did not think anyone would believe her.

In 2008, when she was 14 or 15 years old, Crystal finally told her mother about defendant's abuse, after Jessica had disclosed defendant's conduct to their mother. Her mother called the police, and Crystal told the officer what defendant had done to her.

*Jessica—Counts 3 Through 6*

Jessica is one year younger than Crystal. In 2001, when defendant was about to leave the house after a visit, he reached into her pajama pants and rubbed the skin of her buttocks.

Within a year of that incident, Jessica was lying down on her bunk bed, while one of her sisters was in the upper bunk. Defendant entered the room, lay down beside Jessica, unzipped his pants, and began "humping" her. She felt his penis against her pajama pants in the area of her vagina. Jessica did not tell anyone about it at the time because she did not know defendant's conduct was inappropriate.

When the sisters lived on MacDonald Street, defendant would "grab up [her] butt" while he played with her. She was clothed and he rubbed her buttocks over the clothes. It made her uncomfortable because he rubbed her for such a long time.

A fourth incident took place in the MacDonald Street residence. Jessica and her little sister Irene were on a mattress in the living room, watching television. Defendant was the only other person there that night. He had Jessica lie down on her back, pulled down her pants and underwear, unzipped his pants, lay on top of her, and moved his body back and forth. She could not recall whether he penetrated her vagina.[4] After he got off her, defendant did the same thing to Irene. When he finished with them, the sisters went to the bathroom. Jessica noticed there was "white stuff" on her underwear consistent with semen. The following day, she felt a burning sensation when she urinated.

Jessica's mother would routinely ask her and her sisters whether anyone had "touched" them, but they would always say "no." Jessica did not think their mother would believe the truth about defendant. Finally in 2008, she decided to tell the truth. Her mother called the police, and Jessica told the officer what defendant had done to her.

*Irene—Counts 7 and 8*

Irene is the youngest of the three sisters. She was five years old in 2001. Irene remembered the incident when defendant abused Jessica on the mattress in the MacDonald Street residence. She saw defendant on top of Jessica; he touched Jessica in the area of her vagina with his hand. Afterwards, she and Jessica went to the bathroom, where Jessica showed her the semen-like substance on her underwear. Irene did not recall that defendant touched or abused her at that time.[5] However, when she was "about seven," she wrote in her diary that defendant "raped [her] and Jessica and I hope when I die somebody finds out so they can put him in the electric chair."

Count 8 was based on a subsequent incident. When Irene was five or six years old, defendant took her and Jessica to his residence in Wilmington approximately three times. Once, he took Irene to his room, where he touched her vagina with his hand under her clothes. He rubbed her genitals for a long time, causing her to be frightened. On approximately four other occasions, defendant touched her vagina on top of her clothes. When she was seven years old, defendant threatened to hurt her mother if she told anyone about what he had done to her.

---

[4] At the preliminary hearing, she testified that defendant placed his penis beside her vagina and caused her pain.

[5] This incident was the basis for count 7, on which defendant was acquitted.

*Defense*

Carlos Leiva, a work associate, testified that he had known defendant for nearly 20 years, and defendant had a very good reputation for honesty and nonviolence. Pablo Munoz Alonso had known defendant for eight years and had been his roommate for three or four of those years. Defendant had a good reputation for honesty and was not a violent person.

Defendant testified that he dated the grandmother from 1993 to approximately 2001. He would sometimes take care of Jessica and Irene when they were small children, but he never touched them inappropriately. No one ever complained about any such inappropriate behavior. None of the sisters ever came to his house.

## DISCUSSION

■ Pursuant to California's one strike law (§ 667.51), the trial court imposed a 15-year-to-life term for each conviction under section 288, subdivision (a). The one strike law provides for enhanced indeterminate terms of either 15 or 25 years to life for those who commit enumerated felony sex offenses in specified circumstances. In the 1998 version of the statute, applicable at the time of the charged offenses, one of the enumerated sex offenses was the commission of lewd and lascivious acts in violation of section 288, subdivision (a). (§ 667.61, former subd. (c)(7).)[6] Former subdivision (b) provided for a punishment of 15 years to life if the prosecution alleged and proved one of the specified factual circumstances listed in former subdivision (e). The fifth factual circumstance so listed was the one alleged and proved below: "The defendant has been convicted in the present case or cases of committing an offense specified in subdivision (c) against more than one victim." (§ 667.61, former subd. (e)(5).)[7]

It is undisputed that all of defendant's convictions were for specified predicate sexual offenses under section 667.61, former subdivision (c) and were accompanied with true findings of one of the factual circumstances that trigger application of the 15-year-to-life punishment provision under section 667.61, former subdivision (e). "Section 667.61 requires the trial court to impose a life sentence when the defendant is convicted of an enumerated sexual offense and the People plead and prove one or more of the specified aggravating circumstances." (*People v. DeSimone* (1998) 62 Cal.App.4th 693, 696 [73 Cal.Rptr.2d 73] (*DeSimone*).) Defendant nevertheless argues the one strike law must be interpreted so that ·

---

[6] The 2006 version of section 667.61 listed section 288, subdivision (a), as a qualifying offense in subdivision (c)(8).

[7] The one strike law was again revised effective September 9, 2010. Among other modifications, the multiple-victim circumstance was renumbered as section 667.61, subdivision (e)(4).

the multiple-victim circumstance can be imposed only once for each crime victim, regardless of whether the crimes were committed on separate occasions. We reject this argument because it contradicts the statute's legislative intent as determined by the usual and ordinary meaning of the words of the enactment. (*People v. Stewart* (2004) 119 Cal.App.4th 163, 171 [14 Cal.Rptr.3d 353] (*Stewart*), citing *Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406]; *Trope v. Katz* (1995) 11 Cal.4th 274, 280 [45 Cal.Rptr.2d 241, 902 P.2d 259].)

■ As did the defendant in *Stewart*, defendant contends the multiple-victim circumstance is different in kind from the other enumerated circumstances because all of the others refer to aggravating factors, such as kidnapping or the use of a dangerous weapon, occurring in the commission of the present offense. The *Stewart* court, however, cogently explained why that distinction makes no difference in terms of the statute's application: "The statutory intent and scheme of Penal Code section 667.61, subdivision (e) is not difficult to discern. Where the 'present offense' against a victim is a qualifying offense and the gravity of that offense is enhanced by one of the circumstances enumerated in subdivision (e)(1), (2), (3), (4), (6), or (7), the life sentence mandated by the statute shall apply. But even in circumstances where the subdivisions enumerated above do not apply, if a qualifying offense has been committed against more than one victim, the criminal conduct is considered equally severe and that conduct merits application of the statute so long as those offenses are prosecuted 'in the present case or cases.' (Pen. Code, § 667.61, subd. (e)(5).)" (*Stewart, supra,* 119 Cal.App.4th at p. 171; see *People v. Murphy* (1998) 65 Cal.App.4th 35, 41 [76 Cal.Rptr.2d 130] (*Murphy*) ["[I]n making multiple convictions for violent sex offenses punishable by multiple life sentences, the Legislature was expressing the view that multiple violent sex offenses deserve more severe punishment than a single violent sex offense because of the predatory nature of the perpetrator."].)

No more persuasive is defendant's argument that a commonsense reading of former subdivisions (f) and (g) of section 667.61 limits the application of a one strike life term so that it can be imposed only once for each victim if the sole qualifying factual circumstance is the commission of a predicate offense "against more than one victim" under section 667.61, former subdivision (e)(5). The meaning of the 1998 version of subdivision (f) is unambiguous and its application is clear. When the minimum number of former subdivision (d) or (e) circumstances were pled and proved, the sentencing court should have used them "as the basis for imposing the term provided in subdivision (a) or (b) rather than . . . to impose the punishment authorized under any other law, unless another law provides for a greater penalty." (§ 667.61, former subd. (f).) On the other hand, if additional qualifying circumstances were pled and proved, the 25-year-to-life sentence under section 667.61, subdivision (a) must have been imposed, with any remaining circumstances being used "to impose any punishment or

enhancement authorized under any other law." (§ 667.61, former subd. (f).) Nothing in that provision even hints at an intent to limit imposition of the subdivision (b) one strike life term, based on the multiple-victim circumstance. Rather, it evinces the intent to ensure the greatest possible punishment under that sentencing scheme.

Consideration of the 1998 version of section 667.61, subdivision (g) adds nothing to defendant's argument. It provided that "[t]he term specified in subdivision (a) or (b) shall be imposed on the defendant once for any offense or offenses committed against a single victim during a single occasion. If there are multiple victims during a single occasion, the term specified in subdivision (a) or (b) shall be imposed on the defendant once for each separate victim. Terms for other offenses committed during a single occasion shall be imposed as authorized under any other law, including Section 667.6, if applicable."

The plain meaning is entirely clear. As stated in *Murphy, supra,* 65 Cal.App.4th at page 40, "The only limitation on the number of life sentences which can be imposed is contained in section 667.61, subdivision (g), which provides that the defendant shall be sentenced to one life term per victim per occasion no matter how many offenses listed in subdivision (c) the defendant committed against a particular victim on a particular occasion." Defendant does not contend any of the underlying crimes was committed against multiple victims on the same occasion, or arose out of multiple acts against the same victim on the same occasion. (See *People v. Jones* (2001) 25 Cal.4th 98, 107 [104 Cal.Rptr.2d 753, 18 P.3d 674] ["[W]e conclude that, for the purposes of Penal Code section 667.61, subdivision (g), sex offenses occurred on a 'single occasion' if they were committed in close temporal and spatial proximity."].)

■ Defendant identifies no decisional authority in which his interpretation was endorsed or applied. On the other hand, as the Attorney General points out, the court in *DeSimone, supra,* 62 Cal.App.4th 693 rejected the argument that "subdivision (e)(5) permits only one life sentence per case based on a finding of multiple victims" because that "interpretation is not supported by the plain language of that subdivision, and we are not persuaded to engraft the limitation he seeks onto the words of the Legislature." (*Id.* at p. 698.) In *Murphy, supra,* 65 Cal.App.4th at page 38, the court concluded that "in sentencing a defendant convicted of committing violent sex offenses against different victims on different occasions the one strike law requires the trial court to impose one indeterminate life term per victim per occasion." Additionally, as our Supreme Court explained, "persons convicted of sex crimes against multiple victims within the meaning of section 667.61, subdivision (e)(5) 'are among the most dangerous' from a legislative standpoint. ([*DeSimone, supra,*] 62 Cal.App.4th [at p.] 698 . . . .) The One Strike

scheme therefore contemplates a separate life term for each victim attacked on each separate occasion." (*People v. Wutzke* (2002) 28 Cal.4th 923, 930–931 [123 Cal.Rptr.2d 447, 51 P.3d 310].)

Alternatively, defendant asserts the 2006 amendments to the one strike law serve to proscribe consecutive sentencing where, as here, the qualifying felony is the commission of lewd and lascivious acts under section 288, subdivision (a). He contends those amendments constitute an amendatory statute that should be applied to him under the rule set forth in *Estrada, supra,* 63 Cal.2d 740. "Under the *Estrada* rule, an amendatory statute lessening punishment is presumed to apply in all cases not yet reduced to final judgment as of the amendatory statute's effective date." (*People v. Floyd, supra,* 31 Cal.4th at p. 184, citing *Estrada, supra,* at p. 744.) We need not address the potential application of the *Estrada* rule because defendant's argument is premised on a misreading of the 2006 amendments.

■ The purported ameliorative provision on which defendant seeks to rely is the new subdivision (i) of section 667.61, which provides: "For any offense specified in paragraphs (1) to (7), inclusive, of subdivision (c), . . . the court shall impose a consecutive sentence for each offense that results in a conviction under this section if the crimes involve separate victims or involve the same victim on separate occasions as defined in subdivision (d) of Section 667.6." Defendant points to the fact that subdivision (i)'s enumeration of offenses excludes reference to defendant's qualifying offenses—lewd and lascivious acts. However, nothing in subdivision (i) purports to proscribe the imposition of consecutive one strike sentences for those whose predicate offense was under section 288, subdivision (a). To the contrary, it merely provides a limitation on the *mandatory* imposition of such terms, which by implication leaves the decision to impose consecutive or concurrent terms to the sentencing court's discretion under section 669. (See *People v. Rodriguez* (2005) 130 Cal.App.4th 1257, 1262–1263 [29 Cal.Rptr.3d 314].)

■ Here, the record is clear the prosecution argued that imposition of consecutive sentences was *not* mandatory, but that the trial court had discretion to do so. Further, the court unambiguously indicated that it was exercising its discretion in choosing to impose four consecutive terms and three concurrent terms, explaining that it had exercised its discretion in choosing to impose the consecutive terms based on a variety of aggravating factors—that the victims were extremely young at the time of the offenses, defendant was in a position of trust as one of their caretakers, and defendant threatened and intimidated his victims. As there is no indication the court believed consecutive sentencing was mandatory and defendant does not argue those findings lacked evidentiary support or were inadequate to support the court's imposition of consecutive terms, there was no error, but if error occurred, it was harmless under any legal standard.

## DISPOSITION

The judgment is affirmed.

Armstrong, Acting P. J., and Mosk, J., concurred.

On April 25, 2011, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied July 13, 2011, S192733.