Filed 11/13/13  P. v. Morales CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JORGE MORALES,<br><br>    Defendant and Appellant. | B247913<br><br>(Los Angeles County<br>Super. Ct. No. VA 124649) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael A. Cowell, Judge.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, and Susan Sullivan Pithey, Deputy Attorney General, for Plaintiff and Respondent.

* * * * * *

Defendant Jorge Morales appeals from a judgment convicting him of four counts of lewd acts upon a child, in violation of Penal Code section 288, subdivision (a), and one count of child molestation, in violation of Penal Code section 647.6, subdivision (a)(1).[1] Defendant contends the trial court erred in sentencing him to two consecutive terms of 15 years to life under the "one strike" law based on charges involving the same victim. We disagree, and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The offenses charged in this matter occurred at various times between July 2005 and May 2012. The two victims, K. and J., are cousins who live in the same apartment building. Defendant, who is the father of K.'s half-brother, regularly visited the family home.

### 1. K. -- Counts 2, 5, 6, and 7

K. was 13 years old when she testified at trial.

Defendant's first inappropriate contact with K. occurred when she was about six or seven years old. K. was playing a game of hide and seek with J. Defendant joined the game and looked for K. K. hid in a bedroom closet. Defendant came into the closet, kneeled over her and touched her vagina with his hand over her jeans.

The second inappropriate contact occurred when K. was in the fifth grade. K. was in the living room doing homework and watching television. Defendant approached K. and touched her vagina over her clothes with his hand. At the time, K.'s mother was in the shower and her younger brother was asleep on the couch.

The third inappropriate contact occurred when K. was in the sixth grade. This time, K. was asleep on the couch. She awoke to defendant's hand touching her vagina over her clothes. K.'s mother was taking out the trash at the time of the incident.

While K. was in the sixth grade, defendant masturbated in her presence. According to K., defendant unzipped his pants, pulled out his penis and masturbated in

_____

[1]    Undesignated statutory citations are to the Penal Code.

the living room "a few times a week."  K. saw a white substance on defendant's hands when he stood up.

K. did not tell her mother about these incidents because she was afraid her mother would not believe her.  K. also believed defendant would hurt her mother.  When the police first interviewed K., she denied that defendant touched her inappropriately.  However, when the police later returned to look for defendant, K. revealed these incidents to the police.  The following day, K. told her mother about most of defendant's inappropriate contacts with her.

## 2.  J. – Count 8

J. was nine years old and in the fourth grade at the time of her testimony.

J. occasionally went over to K.'s apartment to play with K. and her half-brother.  According to J., defendant visited K.'s home about two to three times a week.

Defendant's first inappropriate contact with J. occurred when she was about six or seven years old.  J. was at K.'s house.  She left the living room to enter the kitchen.  Defendant followed J. into the kitchen where he tried to grab her "bottom" from behind.  J. was able to get away before defendant was able to touch her anywhere else.

On a different day, defendant grabbed J. from behind and touched her vagina, on "the front part [of] the bottom," over her clothes.  This occurred in K.'s kitchen.

According to J., defendant touched her vagina "mostly every week."[2]  The touching always occurred in the kitchen at K.'s house during the evening hours.  K., her half-brother and their mother were present in the living room during these incidents.

On one occasion, defendant unzipped his pants and took "out his thing" in the living room.  Although K. and her mother were in the living room at the time, neither saw this occur.

J. did not reveal these incidents to anyone until a social worker came to her home.  J. told the social worker about the inappropriate touching by defendant.  The social worker relayed to J.'s mother what J. said.  After J. told her mother what happened, her

---

[2]    J. testified that defendant touched her more than five, but less than 10, times.

3

mother called the police. When questioned by the police, J. told them about defendant's acts. J. never spoke to K. about the incidents and did not know K. was also touched inappropriately.

### 3. Maria -- Evidence Code Section 1108 Witness

Maria was 21 years old at the time of trial.

Defendant's improper contact with Maria occurred in 2007, when Maria was 16 years old.[3] Defendant asked Maria to translate a letter about taxes. Maria opened the envelope and read the handwritten letter, which said "[she] was good looking." As she read the note, defendant touched Maria between her legs. Defendant then touched her vagina and continued towards her zipper. Maria moved and left the living room. She went to her aunt's house and told her what happened. Maria's aunt confronted defendant and then called the police.

Maria has not seen defendant since the 2007 incident. She never spoke to J. or K. about the incident.

### 4. Defense Evidence

Defendant did not testify and presented no evidence at trial.

### 5. Procedural History

On February 14, 2013, a second amended information was filed, charging defendant with four counts of lewd acts upon a child, in violation of section 288, subdivision (a), one count of continuous sexual abuse, in violation of section 288.5, subdivision (a), and one count of child molesting, in violation of section 647.6, subdivision (a)(1). The information further alleged that the "multiple victims" circumstance, within the meaning of section 667.61, subdivision (b), applied.

Prior to submitting the case to the jury, the prosecution moved for and the court granted the dismissal of count 3, the continuous sexual abuse of J., in violation of section 288.5, subdivision (a).

---

[3] At the time, defendant was married to Maria's aunt and lived with Maria and her family.

4

On February 14, 2013, a jury returned a verdict, finding defendant guilty on the remaining counts. As to each count of lewd act upon a child, the jury found true the special allegation that defendant committed the offense against multiple victims pursuant to the "one strike" law provided in section 667.61, subdivision (b). The prosecution filed a sentencing memoranda urging the court to sentence defendant to four consecutive terms of 15 years to life for counts 2, 6, 7, and 8.[4] However, the trial court sentenced defendant to two consecutive terms of 15 years to life on counts 2 and 6, both of which alleged defendant committed lewd acts upon K., in violation of section 288, subdivision (a). Defendant also received two concurrent terms of 15 years to life for counts 7 (lewd acts upon K., in violation of § 288, subd. (a)) and 8 (lewd acts upon J., in violation of § 288, subd. (a)). As to count 5, which alleged defendant committed the crime of child molesting, in violation of section 647.6, subdivision (a)(1), against K., defendant was sentenced to one year in state prison.

## DISCUSSION

Defendant's sentence included two indeterminate terms under section 667.61, both of which were based upon a finding of multiple victims. On appeal, defendant now argues the trial court erred in applying the one strike law in counts 2 and 6 because both counts involved the same victim, K. Defendant asserts the multiple-victim provision may be imposed only once for each victim but cites no cases that support his contention. Defendant recognizes that *People v. Valdez* (2011) 193 Cal.App.4th 1515 rejected the argument that the multiple-victim circumstance can be imposed only once for each victim, but argues *Valdez* was wrongly decided.

Section 667.61 states, in pertinent part, that "any person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for 15 years to life."

---

**4** Counts 2, 6, and 7 alleged defendant committed lewd acts upon K., in violation of section 288, subdivision (a). Count 8 charged defendant with committing lewd acts upon J., in violation of section 288, subdivision (a).

(§ 667.61, subd. (b).)  The subdivision (e) circumstance that was alleged and proved here states the "defendant has been convicted in the present case or cases of committing an offense specified in subdivision (c) against more than one victim."  (§ 667.61, subd. (e)(4).)  Here, it is undisputed that defendant's convictions for lewd acts upon a child qualify as subdivision (c) crimes.  (§ 667.61, subd. (c)(8).)  The jury also found true the special circumstance of multiple victims that triggered the application of the 15 years to life punishment under section 667.61, subdivision (e).  Defendant nevertheless argues the "imposition of multiple 15-to-life terms for each offense committed against the *same* victim in the absence of other enumerated qualifying One Strike circumstances should be foreclosed . . . ."[5]  We disagree.

The plain meaning of the statutory language does not support the interpretation suggested by defendant under section 667.61.  "When the minimum number of former subdivision (d) or (e) circumstances were pled and proved, the sentencing court should have used them 'as the basis for imposing the term provided in subdivision (a) or (b) rather than . . . to impose the punishment authorized under any other law, unless another law provides for a greater penalty.'"  (*People v. Valdez, supra*, 193 Cal.App.4th at p. 1522.)  As recognized in *Valdez*, nothing in the statute "even hints at an intent to limit the imposition of the subdivision (b) one strike life term, based on the multiple-victim circumstance.  Rather, it evinces the intent to ensure the greatest possible punishment

---

[5]     Relying on *People v. Scott* (1994) 9 Cal.4th 331, respondent argues defendant forfeited his claim on appeal when defendant failed to object to the trial court's sentencing choices during the sentencing hearing.  We disagree.  In *Scott*, our Supreme Court held that "complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal."  (*Id.* at p. 356.)  The court opined that, "claims deemed waived on appeal involve sentences which, though otherwise permitted by law, were imposed in a procedurally or factually flawed manner."  (*Id.* at p. 354.)  Here, defendant does not argue the trial court abused its discretion in sentencing, or erred in its articulation in support of, multiple indeterminate terms.  Defendant's claim involves a question of whether the multiple victim circumstance can be applied to offenses involving a single victim.  Therefore, we reject respondent's assertion of forfeiture.

under that sentencing scheme." (*Id.* at p. 1523)  We agree with the reasoning articulated in *Valdez*.

In *People v. Stewart* (2004) 119 Cal.App.4th 163, the defendant was convicted of multiple sex offenses, three of which involved the same victim.  On appeal, the defendant argued the court erred in applying the one strike law, claiming the court could not "bootstrap offenses committed . . . against multiple victims onto the charges that arose from his crimes against [one of the victims] alone." (*Id.* at p. 170.)  The court, however, found no error. (*Id.* at pp. 171-172.)  Even where the multiple-victim circumstance did not apply, the court explained that where "a qualifying offense has been committed against more than one victim, the criminal conduct is considered equally severe and *that conduct merits application of the statute so long as those offenses are prosecuted 'in the present case or cases.'"* (*Id.* at p. 171, italics added.)

Here, defendant's convictions included three counts of lewd acts upon K. (counts 2, 6, & 7), and one count of lewd act upon J. (count 8).  The fact that defendant's indeterminate sentences were based upon offenses committed against the same victim, K., does not render the multiple-victim circumstance inapplicable.  To accept defendant's interpretation of the statute would cause "this circumstance [to] rarely, if ever, exist." (*People v. Stewart, supra*, 119 Cal.App.4th at p. 171.)  Each charge against defendant qualified as a subdivision (c) offense.  All of the qualifying offenses were prosecuted in a single case, and defendant was found guilty on those counts in the same trial.  Like in *Stewart*, the trial court properly applied the one strike law to counts 2 and 6 because "there were multiple victims of defendant's criminal acts and the offenses against each of those victims were tried together in the present case." (*Id*. at p. 172.)

Defendant argues the holding of *People v. Jones* (2001) 25 Cal.4th 98 should be "limited to the type of offender whose conduct qualifies for One Strike treatment based on aggravating circumstances attending the means of committing the underlying qualifying and violent offenses . . . rather than the nature of the offender . . . ."  This argument is futile.  The holding of *Jones* is irrelevant to the issue here.  In *Jones*, the court discussed the meaning of two specific phrases:  (1) "single occasion" in section

7

667.61, former subdivision (g), and (2) "in the commission" in section 12022.3, subdivision (a), and section 667.61, former subdivision (e)(4), for purposes of determining whether a deadly weapon was used in the commission of a sex crime.[6] (*People v. Jones, supra*, at pp. 103, 108.) Neither of these two issues shed any light on whether the multiple victim circumstance applies when the offenses are committed against a single victim. We decline to limit the holding of *Jones* as defendant requests.

In sum, we find no error in defendant's sentence of two consecutive terms of 15 years to life.

## DISPOSITION

The judgment is affirmed.

FLIER, J.

WE CONCUR:

BIGELOW, P. J.

GRIMES, J.

---

[6] The *Jones* court held that sex offenses committed in "close temporal and spatial proximity" occurred on a "single occasion" for purposes of section 667.61, former subdivision (g). (*People v. Jones, supra*, 25 Cal.4th at p. 107.) In addition, the *Jones* court concluded " 'a broad construction of the phrase "in the commission of" advances the purpose of enhancements which provide for additional punishment when a weapon is used . . . .'" (*Id*. at p. 111.)