Filed 3/1/16  P. v Rivas CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D069238 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FVA1300671) |
| JOSE ROBERTO RIVAS, SR., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, Shahla S. Sabet, Judge.  Judgment affirmed; remanded for resentencing.

Nancy Olsen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Heidi Salerno, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Jose Roberto Rivas, Sr. of 12 counts of committing lewd and lascivious acts on a child under the age of 14 years and found true multiple victim allegations as to each count.  Rivas's victims were his two granddaughters, Jane and Mary

Doe, and a family friend's daughter, Abby Doe. Rivas appeals, contending: (1) the evidence did not support one of the six counts involving Jane; (2) the trial court erred by imposing separate life sentences on three counts involving Jane that occurred on one occasion and a life sentence on the count he claims was not supported by substantial evidence; and (3) his sentence of 180 years to life constitutes cruel and unusual punishment. The People concede and we agree that the trial court was authorized to impose only one life term involving the three offenses Rivas committed against Jane on one occasion. In all other respects, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*Jane Doe*

<u>Jane's Testimony</u>

In 2003, Rivas told six-year-old Jane, whose clothes were off, to get onto his bed. Rivas proceeded to kiss Jane on the neck and touched her breasts. He pulled his pants down, slouched over her and rubbed his penis on her vagina.

On another day, Rivas put the back of a dining chair against the door in the living room that opened to the outside of the house. Rivas placed Jane on the chair standing up and facing the door. He then put his fingers in Jane's vagina. Jane became scared, screamed and told Rivas to stop.

On a third occasion, while Jane and her siblings were on the floor watching television, Rivas told Jane to sit next to him on the couch. Rivas instructed Jane to put her hand down his pants and grab his penis, which she did. Jane quickly pulled her hand back out.

When she was in the second grade, Jane told her siblings what Rivas had done to her. Jane did not tell her mother or grandmother because she was scared and thought she would get in trouble.

Officer Randall Peterson's Testimony

Officer Peterson testified that when Jane was 15 years old, he spoke to her about Rivas. Officer Peterson described how Jane reported multiple instances of sexual abuse by her grandfather. When asked to describe the incidents, Officer Peterson stated: "There's multiple instances. So it is hard to describe. One instance was he would digitally penetrated [*sic*.]. The finger was inserted into her vagina. Another instance was that the defendant's penis was rubbed against her vagina, but not inserted. Another instance was she was kissed on the neck. And then another was that he used his hand underneath her clothes to touch her vagina and breasts."

*Mary Doe*

In 2004 or 2005, when Mary was five or six years old, Rivas took her to his bedroom. He laid Mary down on her back on the bed, took off her underwear, and spread open her legs. Rivas then proceeded to insert his penis in Mary's vagina and kissed her on the mouth. Rivas stopped when he heard his wife return from the grocery store. Similar incidents occurred at least two more times until Mary was approximately eight years old.

*Abby Doe*

When Abby was 10 years old, she went to Rivas's home because her mother was friends with Rivas's daughter. While Abby was at Rivas's house, Rivas pulled up her

3

shirt, put his hand on her chest, and kissed her stomach. Rivas also rubbed Abby's vagina over her clothing. After hearing about what had occurred, Abby's mother called the police.

## DISCUSSION

### I. *Sufficiency of the Evidence*

A. Additional Background

Counts five through ten against Rivas pertained to Jane. While the operative second amended information identified the victim for each count, it did not specify the particular conduct connected to each count. During deliberations, the jury asked the court to "list . . . what the acts are that are connected with each of the 6 counts against Jane Doe." Over defense counsel's objection, the court provided the following response: "[t]ouching her naked breast; kissing on her neck; rubbing his penis on her vagina; fondling her vagina; digitally penetrating her vagina; having her touch his penis."

B. Analysis

The parties do not dispute that Jane only testified as to conduct supporting five counts of lewd acts committed by Rivas against her. Further, they agree that the sixth count was based solely on Officer Peterson's testimony that "[Rivas] used his hand underneath [Jane's] clothes to touch her vagina and breasts." Rivas contends Officer Peterson's testimony did not support a separate crime against Jane because it could not be determined from the officer's testimony whether a separate act of lewd conduct, apart from the acts described by Jane at trial, had occurred. He also argues the trial court bolstered the evidence by listing six acts for the jury and characterizing one of those acts

4

as "fondling" Jane's vagina because that term was more suggestive than the term "touching" used by Officer Peterson. We reject Rivas's arguments.

In considering a challenge to the sufficiency of the evidence, "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence — that is, evidence that is reasonable, credible, and of solid value — from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. . . . We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. . . . If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. . . . 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' " (*People v. Albillar* (2010) 51 Cal.4th 47, 60, citations omitted.) We simply consider whether " ' "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " (*People v. Rich* (1988) 45 Cal.3d 1036, 1081.)

Here, applying the proper standard of review, there was substantial evidence to support Rivas's conviction for six counts of committing lewd and lascivious acts on Jane. Jane clearly testified regarding five acts that occurred during three separate incidents. Two of those three incidents included conduct involving Jane's vagina. In the first incident, Rivas rubbed his penis on Jane's vagina while her clothes were off. In the second incident, Rivas put his fingers inside Jane's vagina while she was standing on a chair. Officer Peterson also described these two acts. In addition, Officer Peterson testified that Jane told him of an incident in which Rivas touched her vagina underneath

5

her clothes.  Contrary to Rivas's argument, this evidence supported a separate count of lewd conduct on a child.  The jury could reasonably conclude that the act Officer Peterson described of Rivas touching Jane's vagina *underneath her clothes* was separate and distinct from the acts that Jane testified to because Jane's testimony differed in that she described an incident in which Rivas rubbed his penis on her vagina *while her clothes were off*, and another in which he digitally penetrated her.  Reversal of the judgment is not warranted even if we might have made contrary findings or drawn different inferences, as it is the trier of fact, not the appellate court, that must be convinced beyond a reasonable doubt.  (*People v. Perez* (1992) 2 Cal.4th 1117, 1126.)

We also reject Rivas's argument that the trial court endorsed the prosecution's interpretation of the evidence by listing the six acts involving Jane in response to the jury's question.  Based on our review of the record, there is no indication that the trial court misled the jury.  Consistent with the second amended information, the trial court instructed the jury that Rivas was charged with six counts of committing a lewd or lascivious act on Jane.  In response to a jury question, the trial court provided the jury with a list of the particular acts connected to each count.  The list the trial court provided to the jury corresponded to the evidence at trial.  Further, the trial court merely listed the acts without any suggestion of whether the evidence supported each count.  This was similar to if the acts had been identified with each count in the information.  Accordingly, Rivas has not shown error in the trial court's response to the jury's question.

Lastly, Rivas's argument that the trial court erred by listing one of the six acts as "fondling" rather than "touching" Jane's vagina also lacks merit.  As the People point out,

6

Rivas forfeited the claimed error by failing to object to the use of the term "fondling" in the trial court. (See *People v. Ross* (2007) 155 Cal.App.4th 1033, 1048.) Even if we overlook defense counsel's failure to object or request a different response, Rivas's claim fails. There is no significant difference between "fondling" and "touching." "Fondle" means "to touch or handle (something) in a gentle way" or "to touch (someone) in a sexual way." (Merriam-Webster Online Dict. (2016) <http://www.merriam-webster.com/dictionary/fondle> [as of Feb. 29, 2016].) "Touch" means "to put your hand, fingers, etc., on someone or something." (Merriam-Webster Online Dict. (2016) < http://www.merriam-webster.com/dictionary/touch> [as of Feb. 29, 2016].) In the context of this case, the trial court's use of "fondle" was no more suggestive than Officer Peterson's use of "touch" as the two terms mean essentially the same thing.

II. *Alleged Sentencing Error*

For the six counts of lewd acts perpetrated on Jane, the trial court sentenced Rivas to six consecutive terms of 15 years to life under the "One Strike" law. (Pen. Code, § 667.61.) (All further statutory references are to the Penal Code.) It is undisputed that three of those counts occurred on a single occasion in 2003. Those crimes were Rivas's acts of kissing Jane's neck, touching her breast, and rubbing his penis on her vagina (together, the 2003 crimes). Rivas argues the trial court erred by imposing separate life sentences for each of the 2003 crimes.

As Rivas points out, at the time he committed the 2003 crimes, the "One Strike" law provided that the applicable prison term "shall be imposed on the defendant once for any offense or offenses committed against a single victim during a single occasion."

7

(§ 667.61, former subd. (g).) Our Supreme Court interpreted the phrase "during a single occasion" in that version of the One Strike law to mean the offenses "were committed in close temporal and spatial proximity." (*People v. Jones* (2001) 25 Cal.4th 98, 107 (*Jones*).) Applying that definition, our Supreme Court indicated that "a sequence of sexual assaults by defendant against one victim that occurred during an uninterrupted time frame and in a single location" should be determined to have occurred on a single occasion within the meaning of the statute. (*Id.* at pp. 101, 107 [sexual assaults were committed on a single occasion when the defendant performed numerous sex acts on the victim in a car over the span of at least one and a half hours].)

The People concede and we agree that the court erred in imposing separate life sentences for each of the 2003 crimes. Those crimes occurred during an uninterrupted time frame in a single location against one victim. (*Jones*, *supra*, 25 Cal.4th at p. 107.) Thus, Rivas may be sentenced to only one life term for the 2003 crimes. (§ 667.61, former subd. (g); *People v. Stewart* (2004) 119 Cal.App.4th 163, 174-175.)

Rivas also argues the trial court erred in imposing a separate life sentence on the count involving Jane that he claims was not supported by substantial evidence, namely the count pertaining to touching Jane's vagina underneath her clothes. He contends the prosecution failed to present sufficient evidence that the crime occurred on a different occasion from the other acts involving Jane. As we previously discussed, the crime Officer Peterson described where Rivas touched Jane's vagina underneath her clothes was separate and distinct from Rivas's other crimes against her. (*Ante*, pt. I.)

Jane explicitly described two separate incidents of molestation that involved her vagina. In one instance, Rivas kissed Jane's neck, touched her breast and rubbed his penis on her vagina while her clothes were off. This incident differed from the one Officer Peterson described in that Jane was not wearing clothing in the incident she described and was wearing clothing in the incident Officer Peterson described. Jane testified that in another incident, Rivas placed her on a chair and digitally penetrated her. Digital penetration differs from the "touching" that Officer Peterson described. Based on the differences in the incidents as described by Jane and Officer Peterson, the evidence supports the trial court's imposition of a separate life sentence for Rivas's lewd act of touching Jane's vagina under her clothes.

### III. *Cruel and Unusual Punishment*

Rivas contends that his sentence of 180 years to life constitutes cruel and unusual punishment under the federal and California Constitutions. (U.S. Const., 8th Amend. [prohibits infliction of "cruel and unusual" punishment]; Cal. Const., art. I, § 17 [prohibits infliction of "[c]ruel or unusual" punishment].) We disagree.

The Eighth Amendment of the federal Constitution is violated when a sentence is " 'grossly disproportionate' " to the crime. (*Harmelin v. Michigan* (1991) 501 U.S. 957, 1001.) Similarly, the California Constitution is violated when the punishment "is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424, fn. omitted (*Lynch*).) " 'Whether a punishment is cruel or unusual is a question of law for the appellate court, but the underlying disputed facts must be viewed in the light most

9

favorable to the judgment.' " (*People v. Mantanez* (2002) 98 Cal.App.4th 354, 358.) A defendant must overcome a "considerable burden" when challenging a penalty as cruel or unusual. (*People v. Wingo* (1975) 14 Cal.3d 169, 174.)

We examine three factors to determine whether a sentence is proportionate to the offense and the defendant's circumstances such that it does or does not constitute cruel and unusual punishment: (1) the gravity of the offense and the harshness of the penalty; (2) sentences imposed for other crimes in the same jurisdiction; and (3) sentences imposed for the same crime in other jurisdictions. (*Ewing v. California* (2003) 538 U.S. 11, 22; *Lynch*, *supra*, 8 Cal.3d at pp. 425-427 [comparable three-prong test].) Rivas does not address penalties for similar offenses in other states, nor does he compare sentences imposed for other crimes in the same jurisdiction. Accordingly, he fails to demonstrate disproportionality on these grounds. Accordingly, we analyze the gravity of the offense and the harshness of the penalty.

"The gravity of an offense can be assessed by comparing the harm caused or threatened to the victim or society and the culpability of the offender with the severity of the penalty." (*People v. Carmony* (2005) 127 Cal.App.4th 1066, 1077.) Here, Rivas committed lewd acts on three vulnerable children between the ages of five and ten years old. Two of Rivas's victims were his granddaughters and the other was a family friend's daughter. The crimes spanned nearly 10 years and occurred over multiple incidents. Rivas abused his position of trust over the children. The callous and opportunistic nature of Rivas's crimes against his particularly vulnerable victims are "precisely the sort of

10

sexual offense[s] that warrant[] harsh punishment."  (*People v. Alvarado* (2001) 87 Cal.App.4th 178, 200.)

Rivas asserts his sentence was cruel and unusual because certain of his crimes were less egregious than others and did not involve bodily harm.  He points to the 15 years to life sentences he received for kissing Jane on the neck and Abby on the stomach. We are not persuaded by this argument.  We do not look at Rivas's acts in isolation; rather, we must look at the totality of the circumstances surrounding the commission of the offense, including motive, the manner in which the crime was committed, the extent of defendant's involvement, and the consequences of his conduct.  (*People v. Dillon* (1983) 34 Cal.3d 441, 479.)  While some of Rivas's conduct may not have resulted in bodily injury to his victims, he caused potential psychological and emotional trauma to his young victims.  Further, in a calculated manner, Rivas waited until he was alone with his victims to abuse them.  Moreover, Rivas's acts of kissing Jane on the neck and Abby on the stomach were committed in the context of also touching the girls' breasts and rubbing their vaginas.

Given the nature of Rivas's conduct involving multiple young and vulnerable children, the circumstances surrounding the commission of the crimes, Rivas's position of trust over the children, and his long undeterred history of abusing children, we do not find Rivas's sentence so disproportionate to his conduct to shock the conscience and offend fundamental notions of human dignity.

11

DISPOSITION

The convictions are affirmed.  The matter is remanded for resentencing consistent with this opinion.  Following resentencing, the trial court shall amend the abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.

McINTYRE, J.

WE CONCUR:


BENKE, Acting P. J.


PRAGER, J.*

---

*	Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12