Filed 3/17/16  P. v. Williams CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D069088 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SWF1202977) |
| MELBROUGH WILLIAMS, JR., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside, Michael J. Rushton, Judge.  Affirmed in part; reversed in part; remanded for resentencing.

Allison H. Ting, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Lynne G. McGinnis and Kristine A. Gutierrez, Deputy Attorneys General, for Plaintiff and Respondent.

# I.

## INTRODUCTION

A jury found Melbrough Williams guilty of a series of sexual offenses committed against two women. The jury also found true various One Strike law (Pen. Code, § 667.61)[1] sentencing allegations. On appeal, Williams claims that the trial court erred in failing to sanitize evidence pertaining to an incident involving uncharged sexual offenses that the People introduced pursuant to Evidence Code section 1108. Specifically, Williams contends that the trial court erred in denying his request to preclude the People from presenting evidence that the victim of the uncharged offenses was 14 years old. Williams also claims that in sentencing him on two of the counts, the trial court erred in failing to apply the version of the One Strike law in effect at the time Williams committed those offenses. We reject Williams's evidentiary claim, but agree with his sentencing contention. We affirm Williams's convictions and remand for resentencing.[2]

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Procedural background*

The People charged Williams with six counts of forcible rape (counts 1-2, 7-9, 11) (§ 261, subd. (a)(2)), two counts of forcible oral copulation (counts 3, 12) (§ 288a, subd.

---

[1] All subsequent statutory references are to the Penal Code, unless otherwise specified.

[2] We also direct the trial court to make various corrections to the abstract of judgment after the court resentences Williams on remand.

(c)(2)), one count of forcible penetration (count 4) (§ 289, subd. (a)(1)(A)), two counts of robbery (counts 5, 10) (§ 211), and one count of kidnapping with intent to commit a sexual offense (count 6) (§ 209, subd. (b)(1)).[3] The People alleged that Williams committed counts 1 through 4, 9, 11 and 12 during a burglary (§ 667.61, subd. (d)(4)) and that Williams kidnapped the victim during the commission of counts 7 and 8 (§ 667.61, subd. (d)(2)). The People further alleged in counts 1 through 4, 7 through 9, 11 and 12, multiple victim allegations pursuant to the One Strike law (§ 667.61, subd. (e)(4), former § 667.61, subd. (e)(5)).[4]

A jury found Williams guilty of counts 1, 2, and 4 through 8. The jury found true the multiple victim allegations attached to counts 1, 2, 4, 7, and 8 as well as the kidnapping allegations attached to counts 7 and 8. The jury found not true the burglary allegations in counts 1, 2, and 4. The jury was unable to reach verdicts on count 3 and counts 9 through 12.

The court sentenced Williams to an aggregate term of 100 years to life in prison, consisting of the upper term of 5 years on count 5; 25 years to life on counts 7 and 8; and 15 years to life on counts 1, 2 and 4; all to be served consecutively. On count 6, the court imposed a sentence of 7 years to life in prison, but stayed execution of the sentence

---

[3] The People alleged that Williams committed counts 1 through 5 against E.B. in 2012, counts 6 through 8 against S.M. in 2002, counts 9 and 10 against A.H. in 2011, and counts 11 and 12 against A.F. in 2012.

[4] In 2002, at the time Williams committed the offenses in counts 7 and 8, this allegation was contained in former section 667.61, subdivision (e)(5).

3

pursuant to section 654.  At the People's request, the court dismissed count 3 and counts 9 through 12.

B.      *Factual background*

     1.      *The People's evidence*[5]

        a.      *Williams's sexual assault of S.M.*

At around midnight on October 27, 2002, a car pulled over near where 19-year-old S.M. was walking along the street while working as a prostitute.  The driver, a Hispanic male, told S.M. that he wanted a "date."  Shortly thereafter, S.M. walked over to the car and got into the front passenger seat.

After a couple of minutes, a second man, later identified as Williams, opened the passenger door, entered the car, grabbed S.M. by the neck, and shoved her into the back seat.  S.M. tried to get out of the car, but the Hispanic man locked all of the doors.  Williams pushed S.M. onto the floor of the back seat of the car and held her there.  Williams also took S.M.'s cell phone.

The Hispanic man began to drive the car.  S.M. could not see where they were going, but she believed that they were on a freeway.  S.M. began screaming, crying, and yelling.  After approximately an hour, the car pulled into a garage of a residence.

Williams ordered S.M. out of the car, told her to enter the house, took her upstairs to a bedroom, and directed her to take off her clothes and get into the bathtub.  Williams

---

[5]     We do not discuss the evidence related to the counts involving A.H. and A.F., on which the jury was unable to reach a verdict, because the evidence pertaining to those counts is not material to our resolution of the issues on appeal.

handed S.M. a razor and instructed her to take a bath and shave her pubic hair. After she did so, Williams told S.M. to go into the bedroom and get on the bed. Williams told S.M. that he would let her go the following day if she would have sex with him. S.M. was crying and told Williams that she did not want to have sex with him. She then begged him to put on a condom. Williams retrieved a condom and proceeded to rape her.

At some point during the time that the group was in the house, the Hispanic man left and later returned with food from a fast food restaurant. After the rape, Williams and S.M. went downstairs and ate the food with the Hispanic man. After eating, Williams took S.M. back upstairs and raped her two more times.

When Williams fell asleep just before daylight, S.M. got out of the bed, wrapped herself in a towel, grabbed her purse, and sneaked out of the residence. She ran to a house a short distance away, spoke to the residents, and used the phone at that residence to call police.

b. *Williams's sexual assault of E.B.*

On May 29, 2012, 24-year-old E.B. was working as a prostitute. That night, Williams responded to her advertisement on a website offering escort services and went to her motel room.

Williams gave E.B. $120 for a half-hour of her services. E.B. put the money in her purse, and put the purse in a dresser drawer. Williams took off his clothes and E.B. took off everything but her underwear. E.B. put a condom on Williams's penis, massaged him, and gave him a "hand job." Williams asked E.B. to have sex. E.B.

5

told Williams that he would have to pay additional money in order to have sexual intercourse.  Williams became angry and asked for his money back.  E.B. told him that she did not give refunds.  Williams began to get dressed.

Just after getting dressed, Williams told E.B. that there was a condom under the sink.  As E.B. went to pick up the condom and throw it away, Williams shoved her and pulled out a gun.  Williams ordered E.B. to get into the bathtub.  E.B. became so terrified that she urinated on the floor.  E.B. told Williams that he could do what he wanted with her if he did not kill her, including having sex with her without a condom.

Williams told E.B. to go to the sink, face the mirror, and lift her leg up.  E.B. complied and Williams raped her.  Williams then ordered E.B. to lie on the bed.  After E.B. did so, Williams raped her again.  Williams next ordered E.B. to get on her knees.  For five or six minutes, Williams orally copulated E.B. and placed his fingers in her vagina, before raping her again.

After Williams ejaculated, he put his clothes on.  Williams found the $120 he had given E.B and took it.  Williams told E.B. not to call anyone and said that he would be back because he liked her a lot.  Williams also told E.B. that she had better warn her pimp to stay away from him or he would shoot the pimp in the head.  After making these statements, Williams left.  E.B. reported the incident to the police.

During the ensuing investigation, police determined that Williams was a major contributor of DNA to sperm found on E.B.'s exterior genitalia.

6

c.    *Williams's uncharged robbery of A.M.*

A few years before the trial, A.M. was working as a prostitute. One night, Williams contacted A.M., came to her motel room, and paid her approximately $100 for sex. Williams returned the following day, placed some money on a counter, and again had sex with A.M. After they had sex, Williams held a handgun to A.M.'s head and asked her where she kept her money. A.M. told Williams where her purse was. Williams stole A.M.'s phone, approximately $200, and the money that he had placed on the counter for her services that day. Police later recovered A.M.'s phone in Williams's car.

d.    *Williams's uncharged sexual assault of K.H. in 2011*

As discussed in detail in part III.A, *post*, the People presented evidence that Williams committed a sexual assault on K.H. in 2011, during which he committed a rape under color of authority (§ 261, subd. (a)(7)) and also committed lewd and lascivious conduct on a 14 or 15 year old (§ 288, subd. (c)(1)).

2.    *The defense*

Williams testified in his own defense. He admitted hiring S.M. and E.B. for sexual services and engaging in sexual activity with them, but denied raping either woman. Williams also admitted hiring K.H. for sexual services, and having sex with her, but denied raping her. Williams denied having ever met A.M.

7

DISCUSSION

A.    *The trial court did not abuse its discretion in denying Williams's request to preclude the People from presenting evidence that K.H. was 14 years old at the time of the commission of the uncharged sexual offenses*

Williams claims that the trial court erred in failing to sanitize Evidence Code section 1108 evidence pertaining to an incident involving uncharged sexual offenses that Williams allegedly committed against K.H. Williams maintains that the trial court erred, under Evidence Code section 352, in denying his request to preclude the People from presenting evidence that K.H. was 14 years old at the time of the commission of the uncharged crimes. We apply the abuse of discretion standard of review to Williams's claim. (See, e.g., *People v. Robertson* (2012) 208 Cal.App.4th 965, 991 ["A challenge to admission of prior sexual misconduct under Evidence Code sections 1108 and 352 is reviewed under the deferential abuse of discretion standard"].)

    1.    *Governing law*

        a.    *The statutory scheme*

Evidence Code section 1108 provides in relevant part:

> "(a) In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code] Section 1101,[6] if the evidence is not inadmissible pursuant to [Evidence Code] Section 352.

---

6    Evidence Code section 1101 provides in relevant part: "(a) Except as provided in this section and in Section[ ] . . . 1108 . . . , evidence of a person's character or a trait of

"[¶] . . . [¶]

"(d) As used in this section, the following definitions shall apply:

"(1) 'Sexual offense' means a crime under the law of a state or of the United States that involved any of the following:

"(A) Any conduct proscribed by Section . . . 261, . . . 288 . . . of the Penal Code."

Section 261, subdivision (a)(7) defines the crime of rape under color of authority.[7]

Section 288, subdivision (c)(1) defines the crime of lewd and lascivious acts against a child 14 or 15 years old.[8]

---

his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion."

[7]    Section 261 provides in relevant part:

"(a) Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances:

"[¶] . . . [¶]

"(7) Where the act is accomplished against the victim's will by threatening to use the authority of a public official to incarcerate, arrest, or deport the victim or another, and the victim has a reasonable belief that the perpetrator is a public official."

[8]    Section 288 provides in relevant part:

"(a) . . . [A]ny person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished . . . .

"[¶] . . . [¶]

Evidence Code section 352 provides:

"The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

b.      *Relevant case law*

In *People v. Falsetta* (1999) 21 Cal.4th 903 (*Falsetta*), the Supreme Court described the factors that a trial court should consider in determining whether to exclude evidence of an uncharged offense that is otherwise admissible pursuant to Evidence Code section 1108, pursuant to Evidence Code section 352:

"[T]rial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense."  (*Falsetta*, *supra*, at p. 917.)

The *Falsetta* court explained that "the probative value of 'other crimes' evidence is increased by the relative similarity between the charged and uncharged offenses, the close proximity in time of the offenses, and the independent sources of evidence (the victims) in each offense."  (*Falsetta*, *supra*, 21 Cal.4th at p. 917.)

_____

"(c)  [¶]  (1) Any person who commits an act described in subdivision (a) with the intent described in that subdivision, and the victim is a child of 14 or 15 years, and that person is at least 10 years older than the child, is guilty of a public offense and shall be punished . . . ."

10

A trial court need not expressly refer to all of the *Falsetta* factors in considering whether to exclude evidence pursuant to Evidence Code section 352. (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1168 [" '[W]e are willing to infer an implicit weighing by the trial court on the basis of record indications *well short* of an express statement' "].)

2.     *Factual and procedural background*

a.     *The People's motion to introduce Williams's commission of uncharged sexual offenses against K.H. pursuant to Evidence Code section 1108*

Prior to the trial, the People filed a motion in limine seeking permission to present evidence of Williams's commission of a number of uncharged crimes against several different women, including K.H. With respect to K.H., the People contended that Williams had raped K.H. while she was 14 years old and working as a prostitute. The People described the alleged incident as follows:

> "[Williams] called [K.H.] before coming to her hotel room and set up an appointment to receive prostitution services. When he arrived he spoke to her about how he knew that she was young and that he knew she was a prostitute. [Williams] then pretended to be a police officer. He pulled [out] some form of police identification. He also had a gun. After seeing both the police badge and the gun [K.H.] was told that if she did not have sex she would be arrested. If she had sex with him, she would be allowed to go free. [Williams] then vaginally raped [K.H.]. After raping her, [Williams] ordered her into the shower and watched to make sure that [she] cleaned adequately. [Williams] then left the hotel room."

The People stated that K.H. reported the incident to the police on the day of the incident after they responded to her motel room, due to an anonymous call reporting a minor being involved in prostitution. The People also noted that Williams's DNA was found on a swab taken from K.H. during a sexual assault examination. The People

11

claimed that evidence pertaining to the alleged incident was admissible pursuant to Evidence Code section 1108.

b. *The hearing on the motion*

During a pretrial hearing on the People's motion, defense counsel argued that the court should exclude evidence of the incident involving K.H. pursuant to Evidence Code section 352. Defense counsel argued that evidence pertaining to the incident was extremely prejudicial because K.H. was a minor at the time. The prosecutor argued that the evidence was "uniquely probative" in that K.H was "only the second person who will be present in court where DNA links the defendant to the crime." The prosecutor also argued that evidence of the incident was probative because in the course of committing the offenses against K.H., Williams displayed a form of identification that she believed demonstrated that he was a police officer.

The trial court ruled that evidence pertaining to the incident involving K.H. would be admissible at trial, reasoning in part:

> "[I]n the court's view, it is prejudicial, but it's prejudicial because there seems to be strong evidence that he had sex with a person who was held out to be a prostitute.

> "I have no reason to believe that he knew what her age was. I haven't seen her. I don't know how young or old she looks. And so the only thing that [defense counsel] is really pointing at is because she is a minor, and because she is a minor that changes the whole configuration of the case.

> "And although I do agree that it aggravates his behavior, I don't believe it does so in a way that is inappropriate under the law or that will create a danger of undue prejudice, confusing the issues, or misleading the jury. And I do not think that it will result in an undue consumption of time. It's hard to imagine what might fall within the

12

scope of [Evidence Code section] 1108 more specifically than something like this which is very similar sexual behavior involving another victim. And there is an age difference.

"But that's I don't think enough to exclude it under [Evidence Code section] 352 given that it is highly probative. And I don't think that that probative value is substantially outweighed by the probability of this undue or unfair prejudice."

Immediately after the trial court issued its ruling, defense counsel requested that the court "sanitize [the evidence] by not allowing the age of the victim to come into play." In support of this contention, defense counsel argued that K.H.'s age was "really not relevant to the case but, rather, the conduct is relevant but not the age."

The prosecutor argued that K.H.'s age was relevant because one of the ways in which Williams's conduct with K.H. constituted a qualifying sexual offense was premised on her age.[9] The prosecutor also suggested that K.H.'s age was relevant because Williams preyed on her naivety in falsely claiming to be a police officer in order to rape her.

The trial court clarified that one of the prosecutor's arguments for admitting evidence pertaining to K.H.'s age was that that one of the qualifying sexual offenses required proof of K.H.'s age. The court proceeded to deny defense counsel's request to sanitize the uncharged offense evidence, reasoning:

_____

[9]     Although not expressly mentioned by the prosecutor, it is clear that the prosecutor was referring to section 288, subdivision (c), which defines the crime of lewd and lascivious conduct against a 14 or 15 year old.

13

"I think that that is a compelling argument by the People.

"In addition, it is the truth of what's happened. And in the Court's view, what [Evidence Code section] 1108 is telling us is that if a person has a sexual predilection to engage in deviant behavior, then we're going to let the jury hear about all of that deviant behavior so long as it doesn't contravene [Evidence Code section] 352.

"And so there seems to be, when you add this into it, what [Evidence Code section] 1108 seems to be interested in, which is sort of an indiscriminate taste in inappropriate sexual activity because it doesn't say the same kind of sexual activity under 1108. . . . The [Evidence Code section] 1108 could be . . . [section] 288, [subdivision] (c).

"So the Court does not find that argument compelling. And although I agree that I in theory would have the power or authority to do that, I am choosing not to take that step."

During a subsequent pretrial hearing, the trial court heard additional argument from both parties concerning whether to preclude the People from introducing evidence of K.H.'s age at trial. During this argument, the court asked the prosecutor whether he was "saying this is admissible under [Evidence Code section] 1108 not just because . . . it was a rape, as the victim alleges, but because even if it were consensual, it would be a violation of [section] 288 [subdivision] (c)?" The prosecutor responded in the affirmative. The court also asked the prosecutor, "Is your argument, in part, going to be that he capitalized and took advantage of her young age in order to secure having sex with her?" The prosecutor again responded in the affirmative. The court then reaffirmed its prior ruling that the People would be permitted to present evidence of the incident involving K.H., including evidence of K.H.'s age at the time of the uncharged offenses committed against her.

14

c.      *Evidence pertaining to Williams's commission of uncharged sexual offenses against K.H.*

K.H. testified that in December 2011, she was 14 years old, working as a prostitute, and living in a motel.[10]  K.H. posted advertisements on the Internet, soliciting clients for her prostitution services.  In the advertisements, K.H. listed her age as 20 years old.

On December 31, 2011, Williams responded to one of K.H.'s advertisements and came to her motel room.  Williams asked K.H. how old she was.  K.H. lied and said she was 18 years old.  K.H. explained that she lied, "So I could make the money.  He wouldn't think he was sleeping with a minor."

After K.H. told Williams that she was 18, Williams pulled out a badge, flashed a small gun, and told K.H. that he was an undercover police officer.  Williams said that there were other police officers in the parking lot.

K.H. was scared.  She told Williams that she was 17 years old, started crying, and said that Williams should arrest her.  Williams responded, "I'm not going to arrest you. I'm going to 'F[uck]' you."  K.H. said, "No," and again told Williams to arrest her. Williams then raped K.H.  After the rape, Williams watched K.H. take a shower and then left the room.

Shortly thereafter, police officers came to the motel room and asked K.H. why she was there.  K.H. told the officers that they should already know.  The officers explained

---

10      K.H. testified that she was 17 at the time of the trial.

that they were the only officers at the scene. K.H. described the incident with Williams to the officers. The officers determined that there was no officer in the county who matched the description that K.H. gave them.

Forensic analysis revealed Williams's DNA in semen found on a vaginal swab taken from K.H. during a sexual assault examination.

3. *Application*

Williams claims that the trial court abused its discretion in admitting evidence of K.H.'s age because he was not charged with sexual crimes against children in the present case and thus, there was little probative value in permitting the people to present evidence that his conduct "consisted of a lewd act on a 14-year-old-child." Williams further argues that the possibility of prejudice stemming from the admission of the evidence of K.H.'s age outweighed any potential probative value of the evidence.

Although the trial court might have chosen to preclude the People from presenting evidence of K.H.'s age under Evidence Code section 352, we cannot say that it was an abuse of discretion for the trial court to decline to do so. To begin with, as the People contended in the trial court and argue again on appeal, K.H.'s age had at least some probative value in demonstrating that Williams took advantage of K.H.'s youth in the manner by which he deceived her before raping her. Further, evidence of K.H.'s age was a required element in establishing that Williams committed the uncharged offense of

16

lewd or lascivious act on a 14 or 15 year old (§ 288, subd. (c)(1)), a qualifying sexual offense under Evidence Code section 1108.[11]

Further, the trial court did not abuse its discretion in admitting evidence that Williams committed a violation of section 288, subdivision (c) (lewd or lascivious act on a 14 or 15 year old). While the probative value of Williams's commission of a violation of a sexual offense on a child may not have been high in light of the fact that the charged offenses involved forcible sexual assaults against adults, the trial court could have reasonably concluded that the evidence had *some* probative value. (See *People v. Escudero* (2010) 183 Cal.App.4th 302, 311 ["the prior offense evidence had substantial probative value despite the differences in the ages of the females"]; *People v. Soto* (1998) 64 Cal.App.4th 966, 984 [" ' "[m]any sex offenders are not 'specialists', and commit a variety of offenses which differ in specific character" ' "].) In addition, the offense against K.H. was not remote and, given the DNA evidence, the evidence was overwhelming that Williams committed a violation of section 288, subdivision (c)(1).

The possibility of undue prejudice stemming from the jury hearing evidence of K.H.'s age was mitigated to some degree by the fact that the jury was presented with evidence that K.H.'s ad indicated that she was 20 years old and evidence that K.H. told Williams that she was 18. In addition, because the jury was not instructed that Williams's

---

11    The jury was instructed that in order to prove that Williams committed the uncharged offense of lewd and lascivious act on a child 14 or 15 years of age (§ 288, subd. (c)(1)), the People were required to prove, among other elements, that the victim was "14 or 15 years old at the time of the act." With respect to this uncharged offense, the jury was also instructed, "It is not a defense that the child may have consented to the act."

knowledge of K.H.'s age was an element of any of the uncharged sexual offenses,[12] it is unlikely that the jury focused on whether Williams knew that K.H. was just 14 years old.

Finally, as the record discussed above demonstrates, the trial court carefully considered the question of the admissibility of evidence of K.H.'s age. Under these circumstances, we conclude that the trial court did not abuse its discretion in determining that the probative value of evidence of K.H.'s age was not "substantially outweighed" (Evid. Code, § 352) by the probability that the admission of such evidence would create a substantial danger of undue prejudice under Evidence Code section 352.[13]

B.     *In imposing consecutive One Strike law sentences on counts 7 and 8, the trial court erred in failing to apply the version of that law in effect in 2002, at the time Williams committed those counts; the matter must be remanded for resentencing*

Williams contends that in imposing One Strike law sentences of 25 years to life on counts 7 and 8, the trial court erred in failing to apply the version of section 667.61, subdivision (g) that was in effect in 2002 (former § 667.61, subd. (g)), when he committed the charged offenses. Williams further contends that the trial court could not

_____

[12]     Further, in describing the meaning of the requirement that the defendant have "willfully" touched a part of the child's body, the instruction outlining the elements of section 288, subdivision (c)(1) informed the jury that, "[i]t is not required that [the defendant] intend to break the law, hurt someone else, or gain any advantage."

[13]     Williams claims that the trial court's alleged error in denying his request to preclude the People from presenting evidence of K.H.'s age had the effect of violating his constitutional rights to due process and a fair trial. Williams contends that "adding a federal constitutional dimension to an evidentiary objection is permitted on appeal." (Citing *People v. Brady* (2010) 50 Cal.4th 547, 557, fn. 4.) Our conclusion that the trial court did not abuse its discretion in determining that the proffered evidence was relevant and admissible, necessarily leads to our rejection of Williams's constitutional claim. (See *Ibid.* [" 'rejection, on the merits, of a claim that the trial court erred on the issue actually before that court necessarily leads to rejection of the newly applied constitutional "gloss" as well' "].)

18

have imposed One Strike law sentences on both counts 7 and 8 under former § 667.61, subdivision (g) because the offenses were committed on a "single occasion" (former § 667.61, subd. (g)) as that term was interpreted in *People v. Jones* (2001) 25 Cal.4th 98, 107 (*Jones*).

Williams also claims that the trial court erred in stating that it was required to impose *mandatory* consecutive sentence on counts 7 and 8, because the law in effect in 2002 (former § 667.61) permitted the court to impose either concurrent or consecutive sentences on these counts. Williams requests that we remand the matter to the trial court to permit that court to exercise its discretion with respect to whether to impose concurrent or consecutive sentences on these counts.

The People concede that the trial court "mistakenly applied the current law" in sentencing Williams on counts 7 and 8. However, the People argue that because "the evidence presented at trial supports the conclusion that counts 7 and 8 were committed on 'separate occasions' as that term is defined in *Jones*," the trial court's imposition of One Strike law sentences on both counts 7 and 8 should be affirmed.

The People also concede that, as a result of the trial court's error in applying current law in sentencing Williams on counts 7 and 8, the court "mistakenly believed that it was required to impose these counts consecutively. . . ." However, the People contend that remanding the case to permit the court to exercise its discretion as to whether to impose concurrent or consecutive sentences on these counts would be an "idle act," because, they maintain, it is clear that the court would exercise its discretion to impose consecutive sentences.

19

We agree with the People's concessions and conclude that the trial court's statements at sentencing unequivocally indicate that the court erroneously applied current sentencing law rather than former section 667.61 in sentencing Williams on counts 7 and 8. We conclude that the matter must be remanded for a new sentencing hearing at which the trial court shall determine whether counts 7 and 8 were committed on a "single occasion" (former § 667.61, subd. (g)), and whether to impose concurrent or consecutive sentences on these counts. After making these determinations, the trial court shall resentence Williams on all counts in a manner consistent with the court's determinations on these issues.

    1.    *Governing law*

        a.    *Relevant portions of the law at the time of the commission of the offenses charged in counts 7 and 8*

            i.    *Sentencing for the commission of multiple sexual offenses under former section 667.61, subdivision (g)*

Former section 667.61, subdivision (g) provided that a One Strike sentence of 25 years to life "shall be imposed on the defendant once for any offense or offenses committed against a single victim during a single occasion." In *Jones*, *supra*, 25 Cal.4th 98, the California Supreme Court considered the meaning of the term "single occasion" in former section 667.61, subdivision (g). The *Jones* court concluded that "multiple sex offenses occurred on a 'single occasion' within the meaning of . . . section 667.61, subdivision (g), if there was a close temporal and spatial proximity between offenses." (*Jones*, *supra*, at pp. 100-101.)

20

The *Jones* court specifically rejected the contention that the term "single occasion" in former section 667.61, subdivision (g) should be interpreted in a manner similar "to the definition of . . . 'separate occasions' under Penal Code section 667.6, subdivision (d)," which provides for full, separate, and consecutive sentences for certain sex offenses " 'if the crimes involve separate victims or involve the same victim on separate occasions.' " (*Jones*, *supra*, 25 Cal.4th at p. 104, quoting § 667.6, subd. (d).) The *Jones* court rejected the section 667.6, subdivision (d) standard, and concluded that multiple sex offenses occur on a "single occasion" under former section 667.61, subdivision (g) if there is a close temporal and spatial proximity between the offenses. (*Jones*, *supra*, at pp. 100-101.)

In 2006, the Legislature superseded *Jones* by expressly adopting the standard for imposing multiple One Strike sentences that the court rejected in that case. (See Stats. 2006, ch. 337, § 33.) Specifically, the Legislature mandated the imposition of One Strike law sentences "for each offense that results in a conviction under this section if the crimes involve separate victims or involve the same victim on *separate occasions as defined in subdivision (d) of Section 667.6*." (Italics added.)

ii. *Consecutive sentencing under former section 667.61*

Unlike section 667.61, subdivision (i),[14] former section 667.61 did not require a trial court to impose mandatory consecutive One Strike law sentences in cases in which a

_____

14      Section 667.61, subdivision (i) provides in relevant part, "[T]he court shall impose a consecutive sentence for each offense that results in a conviction under this section if

21

defendant committed multiple One Strike law offenses against a victim on separate occasions. (See *People v. Rodriguez* (2005) 130 Cal.App.4th 1257, 1262 [noting that former section 667.61 "does *not* mandate" that sentences imposed under former section 667.61, subd. (g) be served consecutively].)

2. *Application*

    a. *The record is clear that the trial court erroneously failed to apply former section 667.61, subdivision (g) in imposing One Strike sentences on both counts 7 and 8*

At sentencing, in determining whether to impose One Strike sentences on both counts 7 and 8, the trial court made no reference to former section 667.61, subdivision (g) or the standard for determining whether multiple sex offenses occurred on a "single occasion" for purposes of that statute, as established in *Jones*. Instead, the court referred to section 667.61, subdivision (i), stating, "And considering the language of Penal Code [s]ection 667.6, [subdivision] (d) and the description of the same victim on separate occasions, I do find that the crimes for which the defendant was convicted . . . involve the same victim on separate occasions within the meaning of Penal Code [s]ection 667.6, [subdivision] (d) . . . ." The court proceeded to impose One Strike law sentences of 25 years to life on both counts 7 and 8.

In 2002, at the time of Williams's commission of counts 7 and 8, the Legislature had not adopted section 667.61, subdivision (i) and its incorporation of the "reasonable

_____

the crimes involve separate victims or involve the same victim on separate occasions as defined in subdivision (d) of Section 667.6."

22

opportunity to reflect" standard (§ 667.6, subd. (d)). Further, the Supreme Court had expressly rejected that standard in *Jones*. We therefore agree with the People that the trial court's "references to section 667.61, subdivision (i)," and the court's determination that Williams had a "reasonable opportunity to reflect on his actions," make clear that the trial court "mistakenly applied the current law when it sentenced [Williams] . . . ."

> b. *The record is clear that the trial court erroneously concluded that it was required to impose mandatory consecutive sentences on counts 7 and 8*

At sentencing, after reviewing current section 667.61, subdivision (i), the trial court stated:

> "So what is very clear is that where the two separate victims are involved the Court is *mandated* to impose consecutive sentences, and where the circumstances involving a single victim fall within [section] 667.6[, subdivision] (d), I am also required to do the same."

The court thereafter ruled that the One Strike law sentences of 25 years to life on both counts 7 and 8 would be consecutive.

The law in effect at the time of Williams's commission of counts 7 and 8, former section 667.61, did not mandate the imposition of consecutive sentences.[15] We therefore agree with the People that the trial court erroneously concluded that it was required to impose mandatory consecutive sentences on counts 7 and 8.

> 3. *On remand, the trial court shall determine whether counts 7 and 8 were committed on a "single occasion" under former section 667.61,*

_____

[15] The consecutive sentencing mandate was also adopted in 2006. (See Stats. 2006, ch. 337, § 33.)

23

*subdivision (g)*

In his brief on appeal, Williams contends that if the trial court had properly applied the " 'single occasion' rule of then-existing section 667.61, subdivision (g)," the trial court could have imposed only a single One Strike law sentence for counts 7 and 8 because the rapes forming the basis of those counts occurred "in close temporal and spatial proximity."  The People, in contrast, argue that the evidence presented at trial establishes that counts 7 and 8 were committed on "separate occasions" under *Jones*.  We conclude the trial court must resolve this factual matter on remand because the evidence does not establish, as a matter of law, either party's position.  By way of summary, the evidence suggests that the rapes on which counts 7 and 8 were based were separated by a period of time during which Williams and the victim left the upstairs bedroom and went downstairs, where they ate and spoke with a third person.  However, it appears that both rapes occurred in the upstairs portion of the house, and the victim apparently remained under Williams's control in the same residence throughout the entire incident.

In evaluating whether the rapes described above occurred on a " 'single occasion' within the meaning of . . . section 667.61, subdivision (g)" under *Jones*, such that only a single One Strike sentence could be imposed, the trial court is directed to the following cases in which courts have undertaken a similar analysis:  *Jones*, *supra*, 25 Cal.4th at pp. 100-101 [sexual offense occurred on a single occasion where defendant repeatedly

24

sexually assaulted victim in back seat of a car over a period of approximately an hour and a half ]; *People v. Fuller* (2006) 135 Cal.App.4th 1336, 1343 [concluding that three rapes occurred on a single occasion under *Jones* where the rapes occurred "within about an hour" while defendant and victim remained in same apartment and "[d]efendant kept [victim] under his continuous and uninterrupted control during the entire time of the incident"]; *People v. Chan* (2005) 128 Cal.App.4th 408, 424 ["The forcible lewd conduct offenses in this case were committed on separate days over a six-month 10-day time period—hence, they were not committed in 'close temporal and spatial proximity' within the meaning of [former] section 667.61, subdivision (g)"]; *People v. Stewart* (2004) 119 Cal.App.4th 163, 167, 174-175 [concluding defendant could receive only a single life term under former section 667.61, subdivision (g) where defendant asked child victim to take off her clothes, rubbed lotion on her arms, legs, and chest, licked her vagina for about five seconds before victim pushed defendant's head away, and continued to orally copulate victim for two or three minutes despite being told three times to stop].

Accordingly, on remand, the trial court shall determine whether counts 7 and 8 were committed on a "single occasion" under former section 667.61, subdivision (g) such that Williams may not receive a One Strike law sentence on each count. If the court concludes that the offenses were committed on a "single occasion" under former section 667.61, subdivision (g), the Court shall impose a single One Strike law sentence on one of the two counts and impose a term "authorized elsewhere in the Penal Code" on the other count. (*People v. Stewart*, *supra*, 119 Cal.App.4th at p. 175.)

25

*4.		On remand, the trial court shall determine whether the new sentences imposed on counts 7 and 8 shall be concurrent or consecutive*

The People contend that it is clear from the trial court's statements at sentencing concerning the aggravated nature of Williams's crimes that the court would have imposed consecutive sentences on counts 7 and 8, even if it had been aware of its discretion to impose either consecutive or concurrent sentences on these counts. We need not speculate with respect to whether the court would have imposed consecutive sentences on counts 7 and 8 because we are remanding the case for resentencing, for the reasons stated in part III.B.3, *ante*. Accordingly, on remand, we direct the trial court to exercise its discretion to determine whether the sentences imposed on counts 7 and 8 on resentencing shall be served concurrently or consecutively.

C.		*The errors in the abstract of judgment must be corrected*

Williams contends that the abstract of judgment erroneously states that count 5 was committed " 'in concert' " and that he was convicted of count 6 by "plea." The People concede the errors. We agree with the concessions. In addition to these errors, the abstract of judgment incorrectly states that the crimes charged in counts 6, 7, and 8 were committed in 2012. It is undisputed that these crimes were committed in 2002.

On remand, the trial court shall prepare a new abstract of judgment correcting these errors.

27

IV.

DISPOSITION

The convictions are affirmed.  The judgment is reversed and the matter is remanded for resentencing in accordance with part III.B, *ante*.  Upon resentencing, the trial court is directed to prepare a new abstract of judgment outlining the new sentences imposed and correcting the errors identified in part III.C, *ante*, and to forward the new abstract of judgment to the Department of Corrections and Rehabilitation.

AARON, J.

WE CONCUR:

McCONNELL, P. J.

PRAGER, J.*

---

\*       Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

28