Filed 2/9/21  P. v. Ramos CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>EMANUEL MACHADO RAMOS,<br><br>    Defendant and Appellant. | F078621<br><br>(Super. Ct. No. 15CR-04399)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Merced County.  Carol K. Ash, Judge.

Tonja R. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Kimberley A. Donohue, for Plaintiff and Respondent.

-ooOoo-

**SEE CONCURRING AND DISSENTING OPINION**

Defendant Emanuel Machado Ramos was charged with two counts of committing lewd acts upon a minor under 14 years of age (Pen. Code,[1] § 288, subd. (a) [counts 1-2]) and four counts of committing lewd acts upon a minor 14 or 15 years of age who was at least 10 years younger than him (*id.*, subd. (c)(1) [counts 3-6]). As to counts 1 and 2, the information alleged he was previously convicted of committing lewd acts upon a minor under 14 years of age. (§ 667.61, subds. (a), (d)(1).) Following trial, the jury found defendant guilty as charged. In a bifurcated proceeding, the trial court found true the prior conviction. Defendant was sentenced to an aggregate determinate term of five years on counts 3 through 6 plus an aggregate indeterminate term of 50 years to life on counts 1 and 2.

On appeal, defendant contends the trial court erred by (1) admitting into evidence certified documents relating to his prior lewd act conviction; and (2) imposing consecutive sentences on counts 1 and 2 under the belief it was required to do so by section 667.61. We find (1) the court did not abuse its discretion when it admitted these documents; and (2) notwithstanding the purported sentencing error, a remand for resentencing would be futile because, absent the asserted error, the court would have reached the same conclusion.

## STATEMENT OF FACTS

### I. Prosecution's case-in-chief.

C.[2] was born in 1996. When she was two years old, she moved into the home of defendant, her stepfather.

The first incident occurred when C. was 13 years old. She was sleeping on the living room couch when she felt a hand rubbing her back. C. "slightly cracked [her] eyes" and saw defendant. The touching "stopped after awhile" and she fell back asleep.

---

[1]    Unless otherwise indicated, subsequent statutory citations refer to the Penal Code.

[2]    We identify the victim by her first initial in accordance with California Rules of Court, rule 8.90(b)(4).

2.

Sometime later, C. once again felt defendant's hand rubbing her back. She "didn't think this was normal" and "got [a] weird feeling . . . in the pit of [her] stomach." As a 13 year old, C. endured such actions on at least five occasions. A similar incident occurred when she was 14 years old. C. was sleeping on the living room loveseat when she felt a hand "resting . . . like deadweight" on her stomach.

Thereafter, multiple incidents occurred in C.'s bedroom while she either was asleep or appeared to be asleep. Defendant started to put his hand underneath C.'s clothes and fondle her shoulders, back, buttocks, and inner thighs after she turned 14 years of age. He started to touch her vagina after she turned 15 years of age. Shortly before C. turned 16 years of age, defendant had sexual intercourse with her. She was lying on her bed when he entered the room, removed the blankets, "stripped [her] from the bottom half down," "spread [her] legs," and "shoved his penis into [her] vagina." The sexual abuse continued until sometime after C. turned 18 years of age.

In 2015, C. told her youth pastor that she was "molested" and "being sexually abused." The youth pastor subsequently reported the information to the Merced County Sheriff's Office. C. met with Detective Zyskowski and agreed to make a pretext phone call to defendant. During the call, the following colloquy transpired:

"[C.]: I have some concerns.

"[Defendant]: What?

"[C.]: I think I might be pregnant.[3] [¶] . . . [¶]

"[Defendant]: Well, what are your plans?

"[C.]: I don't know. That's why I'm calling you. . . . [S]hould I go to the doctor?

"[Defendant]: Yeah, you wanna go to the doctor – I don't know. What do you wanna do? Tell me whatever you wanna

---

**3** At trial, C. testified she was not pregnant at the time of the pretext call.

do, and I'll back you up.  You know I'll always back you up . . . .  [¶] . . . [¶]

"[C.]:                I have a question for you.

"[Defendant]:      Uh-huh.

"[C.]:                Why'd you do it?  [¶] . . . [¶]

"[Defendant]:      I don't know, baby.  I can't explain it.  [¶] . . . [¶]

"[C.]:                What should I say when the . . . (unintelligible) asks me who the father is?

"[Defendant]:      I mean you just – I don't (unintelligible).

"[C.]:                If it's your baby, what do I do?

"[Defendant]:      I don't know, baby. . . .  [¶] . . . [¶]

"[C.]:                It's obviously your baby.

"[Defendant]:      I don't know, baby.  How long are you gonna be gone?

"[C.]:                I don't know, but I can't see you – I can't stand to look at you.  That's why I wanna do this over the phone.

"[Defendant]:      That's fine.  I understand.  [¶] . . . [¶]

"[C.]:                So why did you do it?

"[Defendant]:      I don't know baby, I can't explain it.  Give me some time, and then I will explain it once I figure it out.  Okay?

"[C.]:                It hurt every time.

"[Defendant]:      I'm sorry.  I'm really sorry.

"[C.]:                Are you?

"[Defendant]:      Yeah.

"[C.]:                I was only a child. . . .  [¶] . . . [¶]  . . . How – how could you do what you did to a child?  You're always saying how you're a godly man and you want to follow [G]od but you don't act that way at all.

4.

"[Defendant]:     Well yeah, I'm sorry but . . .

"[C.]:           Sorry's not always good enough  [¶] . . . [¶]

"[Defendant]:     I know – I know . . . sorry doesn't cover everything.
                  That's – that's just the only explanation I have for you
                  right now.  I don't know what else to tell you right
                  now.  [¶] . . . [¶]

"[C.]:           I never wanted you to do this stuff to me in the first
                  place.

"[Defendant]:     . . . . I'm not a perfect person.  I know – I know it was
                  completely wrong.  I just ask God all the time, 'Why?'

"[C.]:           I was 13.  How – how could you do that to a girl . . .
                  who's not 14. . . .  [F]irst years . . . as a teenager – first
                  time learning about all this stuff.

"[Defendant]:     I don't know baby.  [¶] . . . [¶]

"[C.]:           . . . . Did you ever use a condom?

"[Defendant]:     No.

"[C.]:           Why?

"[Defendant]:     I don't know, baby."[4]

## II.    Defense's case-in-chief

At trial, defendant—who was born in 1967 — admitted he was previously convicted of committing lewd acts upon a minor under 14 years of age.  He admitted an "inappropriate relationship" with C. starting when C. was "[a]round 15, close to 16" years of age.  Defendant admitted he touched C. in her bed while she slept or appeared to be asleep; felt her body over and underneath her clothes; "[s]ometimes" removed her clothes; fondled her bare chest, back, thighs, and buttocks; rubbed and put his fingers into her vagina; and inserted his penis into her vagina without using a condom.  He denied any misconduct took place before she was 14 years old.

---

[4]     The jury listened to a recording of the call.

**DISCUSSION**

**I.    The trial court did not abuse its discretion when it admitted into evidence certified documents relating to defendant's prior lewd act conviction**

*a. Background*

In a pretrial motion, the prosecution asked the court to admit into evidence certified documents relating to defendant's 1989 lewd act conviction pursuant to Evidence Code section 1108.[5]  The prosecution sought to introduce "the fact of conviction," not "the specifics of that crime."

At a motion hearing, defense counsel noted the circumstances underlying the prior conviction:  defendant was babysitting a five-year-old relative when he "put his mouth on her vagina" and showered with her.  In contrast to C., the earlier victim was prepubescent, was abused over the course of "a day or two," and defendant did not engage in sexual intercourse.  Defense counsel also emphasized defendant would not dispute "having a sexual relationship with [C.] between the ages of 14 and 18" and the key question was whether C. was either 13 or 14 years old when the sexual abuse began.  In response, the prosecution argued that evidence of defendant's prior conviction was relevant because it established "[his] propensity to commit sexual acts."

The trial court granted the prosecution's request.  It reasoned:

> "[Evidence Code section] 1108 is much broader than [Evidence Code section 1101:] . . . you don't have to have the same degree of similarity . . . between crimes or even closeness in time . . . .  That's for sure.  [¶]  And then I was just reviewing some cases now, and it does seem to be fairly broad in allowing sexual-assault evidence.  [¶] . . .  I think [the prosecution] makes a good point.  [The jury is] not going to know the age [of the earlier victim].  [¶] . . . [¶]

---

[5]    These documents originally consisted of the criminal complaint, filed in the Municipal Court of Santa Clara County Judicial District on July 26, 1989, the minutes of an October 31, 1989 change-of-plea hearing, and the abstract of judgment.  The criminal complaint was later withdrawn.

6.

". . . . [U]nder [Evidence Code section] 352 obviously it's prejudicial, but most evidence is prejudicial and most relevant evidence is prejudicial, and . . . I think the probative value would outweigh any possible prejudice to the jury in this case if they're just seeing the conviction and nothing else because I think it does go to show his intent in this case even though that's not required under [Evidence Code section] 1108, but it's just clear from the reading of [Evidence Code section] 1108 that it is to be interpreted very broadly in allowing evidence to be admissible. [¶] And . . . looking through the cases cited in this code section, there's cases where various types of sexual assaults are committed. It's not always the same offense even in the case that's on trial."

Prior to closing arguments, the court instructed the jury:

"[CALCRIM No. 1191A (Evidence of Uncharged Sex Offense):] The People presented evidence that . . . defendant committed the crime of . . . lewd conduct upon a child that was not charged in this case. . . . You may consider this evidence only if the People have proved by a preponderance of the evidence that . . . defendant, in fact, committed the uncharged offense. [¶] . . . [¶] . . . If you decide that . . . defendant committed the uncharged offense, you may, but are not required to, conclude from that evidence that . . . defendant was disposed or inclined to commit sexual offenses, and based upon that decision, also conclude that . . . defendant was likely to commit and did commit a lewd act upon a child as charged in [c]ounts 1 through 6 as charged here. [¶] If you conclude that . . . defendant committed the uncharged offense, that conclusion is only one factor to consider along with all of the other evidence. It is not sufficient by itself to prove that . . . defendant is guilty of lewd act upon a child as charged in [c]ounts 1 through 6. . . . [T]he People must still prove the charge beyond a reasonable doubt."

*b. Analysis*

Generally, "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." (Evid. Code, § 1101, subd. (a).) However, "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code s]ection 1101, if the evidence is not inadmissible pursuant to [Evidence Code

s]ection 352." (*Id.*, § 1108, subd. (a).) "Available legislative history indicates [Evidence Code] section 1108 was intended in sex offense cases to relax the evidentiary restraints [Evidence Code] section 1101, subdivision (a), imposed, to assure that the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility. In this regard, [Evidence Code] section 1108 implicitly abrogates prior decisions of [the California Supreme Court] indicating that 'propensity' evidence is per se unduly prejudicial to the defense." (*People v. Falsetta* (1999) 21 Cal.4th 903, 911.)

"Evidence Code section 1108 'radically changed' the general rule prohibiting propensity evidence in 'sex crime prosecutions.' [Citation.] 'By removing the restriction on character evidence in [Evidence Code] section 1101, [Evidence Code] section 1108 now "permit[s] the jury in sex offense . . . cases to consider evidence of prior offenses for any relevant purpose" [citation], subject only to the prejudicial effect versus probative value weighing process required by [Evidence Code] section 352.' [Citation.] Evidence of prior crimes is admissible, unless otherwise excluded by Evidence Code section 352, whenever it may be helpful to the jury on a commonsense basis, for resolution of any issue in the case, including the probability or improbability that the defendant has been falsely accused. [Citation.]" (*People v. Robertson* (2012) 208 Cal.App.4th 965, 990, italics omitted (*Robertson*).)

" 'To be admissible under Evidence Code section 1108, "the probative value of the evidence of uncharged crimes 'must be substantial and must not be largely outweighed by the probability that its admission would create a serious danger of undue prejudice, of confusing the issues, or of misleading the jury.' [Citations.]" [Citation.] "The principal factor affecting the probative value of an uncharged act is its similarity to the charged offense. Other factors affecting the probative value include the extent to which the source of the evidence is independent of the charged offense, and the amount of time between the uncharged acts and the charged offense. The factors affecting the prejudicial

effect of uncharged acts include whether the uncharged acts resulted in criminal convictions and whether the evidence of uncharged acts is stronger or more inflammatory than the evidence of the charged offenses." [Citation.] "The weighing process under [Evidence Code] section 352 depends upon the trial court's consideration of the unique facts and issues of each case, rather than upon the mechanical application of automatic rules." [Citation.]' [Citation.]" (*Robertson*, *supra*, 208 Cal.App.4th at pp. 990-991.)

"A challenge to admission of prior sexual misconduct under Evidence Code sections 1108 and 352 is reviewed under the deferential abuse of discretion standard and will be reversed 'only if the court's ruling was "arbitrary, whimsical, or capricious as a matter of law. [Citation.]" [Citation.]' [Citation.] 'We review the correctness of the trial court's ruling at the time it was made, . . . and not by reference to evidence produced at a later date.' [Citation.]" (*Robertson*, *supra*, 208 Cal.App.4th at p. 991.) Moreover, "[i]f a judgment rests on admissible evidence it will not be reversed because the trial court admitted that evidence upon a different theory, a mistaken theory, or one not raised below." (*People v. Brown* (2004) 33 Cal.4th 892, 901.) " ' "No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for the wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." ' [Citation.]" (*Ibid*.)

Here, we find no abuse of discretion. Defendant's prior conviction for committing lewd acts upon a minor under 14 years of age—one of the crimes charged in the instant case—was probative circumstantial evidence of his propensity to sexually abuse young female relatives. (See Evid. Code, § 1108, subd. (d)(1)(A) [conduct proscribed by § 288 constitutes qualifying "sexual offense"]; *People v. Loy* (2011) 52 Cal.4th 46, 63 [" 'It is enough the charged and uncharged offenses are sex offenses as defined in [Evidence Code] section 1108.' "].) As defendant himself acknowledges, "the trial court excluded

9.

inflammatory details surrounding [the] prior offense—such as the age of the victim—by sanitizing the exhibit the jury viewed." That the conviction for the uncharged offense occurred decades earlier "is a relevant factor for the court to consider in exercising its discretion" but "alone does not compel exclusion of the evidence." (*People v. Cordova* (2015) 62 Cal.4th 104, 133.) Finally, the court instructed the jury with CALCRIM No. 1191A (see at p. 7, *ante*), which offset the risk the "jury might punish the defendant for his uncharged crime[] regardless of whether it considered him guilty of the charged offense" (*People v. Frazier* (2001) 89 Cal.App.4th 30, 42). (See *People v. Holt* (1997) 15 Cal.4th 619, 662 ["Jurors are presumed to understand and follow the court's instructions."].)[6]

## II. A remand for resentencing would be futile because the record establishes the court would have imposed consecutive indeterminate terms on counts 1 and 2 regardless of section 667.61.

### a. Background

At the sentencing hearing, the trial court reviewed the probation report and listened to numerous victim impact statements and counsels' comments. The court remarked:

> "[R]egarding circumstances in aggravation, . . . I think the crime did involve great violence. When you have someone . . . acting with lewd intent upon a child who's only 13 which led ultimately to intercourse with her even though she was 14 or 15 at that time, that is great bodily harm to a child, I think, and certainly a threat of great bodily harm, . . . and obviously . . . , [C.] was particularly vulnerable. . . . [¶] . . . [The manner in which the crimes were carried out] indicated planning that [defendant] would take advantage of her when she was asleep or lying in bed, and she would just lay there quietly. [¶] . . . He did take advantage of a position of trust or confidence. He was her stepfather but as a father to her. [¶] . . . [H]e has a prior conviction for the same type of an act . . . .

---

[6] Because we find no error, we need not address defendant's contentions that the erroneous admission of evidence deprived him of due process and was prejudicial.

10.

"As far as circumstances in mitigation, I really would find nothing mitigating except for . . . his prior performance on probation or parole was satisfactory . . . . [T]he criteria affecting concurrent or consecutive sentences, these were all separate acts committed over a period of time. . . . It was planned taking advantage of his daughter, basically, and so I don't think he's deserving of concurrent sentences."

As to count 1, the court imposed 25 years to life. As to count 2, the court imposed 25 years to life "to run . . . consecutive[ly] because . . . each of those counts occurred on separate occasions, and [it was] required to run them consecutively according to [section 667.61]."

### b. Analysis

Section 667.61, also known as the "One Strike" law (*People v. Hammer* (2003) 30 Cal.4th 756, 759), mandates consecutive sentences for certain offenses. (See § 667.61, subd. (i) ["For any offense specified in paragraphs (1) to (7), inclusive, of subdivision (c), or in paragraphs (1) to (6), inclusive, of subdivision (n), the court shall impose a consecutive sentence for each offense that results in a conviction under this section if the crimes involve separate victims or involve the same victim on separate occasions . . . ."].) Violations of section 288, subdivision (a), do not constitute qualifying offenses. (See *id.*, subds. (c)(8), (i).) "However, nothing in [section 667.61,] subdivision (i) purports to proscribe the imposition of consecutive one strike sentences for those whose predicate offense was under section 288, subdivision (a). To the contrary, it merely provides a limitation on the *mandatory* imposition of such terms, which by implication leaves the decision to impose consecutive or concurrent terms to the sentencing court's discretion under section 669." (*People v. Valdez* (2011) 193 Cal.App.4th 1515, 1524.)

Here, the court incorrectly stated section 667.61 mandated consecutive sentences on counts 1 and 2. That was not, however, the only reason it gave for imposing the sentences consecutively. The court found several circumstances in aggravation, but only one circumstance in mitigation. It found counts 1 and 2 concerned separate planned acts by defendant that took advantage of his daughter "over a period of time." It stated

11.

defendant was not "deserving of concurrent sentences."  Remand is not required when the record reveals a clear indication the trial court would not have reduced the sentence had it thought it had the discretion to do so.  (Cf. *People v. Almanza* (2018) 24 Cal.App.5th 1104, 1110.)  Remand is not, therefore, required here.

## **DISPOSITION**

The judgment is affirmed.

DETJEN, J.

I CONCUR:

HILL, P.J.

SNAUFFER, J., Concurring and Dissenting.

I concur with the majority opinion and respectfully dissent only with respect to the conclusion that remand for resentencing would be futile and thus, unwarranted.

The First District recently summarized the standard for remand as follows:

> "We begin by discussing the general standard for assessing when a remand is required for a trial court to exercise sentencing discretion. '[W]hen the record shows that the trial court proceeded with sentencing on the . . . assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing. [Citations.] Defendants are entitled to "sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court," and a court that is unaware of its discretionary authority cannot exercise its informed discretion.' [Citation.] But if ' "the record shows that the trial court would not have exercised its discretion even if it believed it could do so, then remand would be an idle act and is not required." ' " (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 425 (*McDaniels*).)

It is well established that remand is appropriate when a trial court mistakenly believes it had no discretion to impose concurrent as opposed to consecutive sentences under the law. (*People v. Deloza* (1998) 18 Cal.4th 585, 599-600; *People v. Rodriguez* (2005) 130 Cal.App.4th 1257, 1263.)

In this case, the Probation Officer's Report and Recommendation stated only that the defendant was ineligible for probation and that defendant be committed to CDCR "for the term specified by the court."

The majority accurately summarized the trial court's discussion of sentencing but did not emphasize the judge's conclusion that she was "required to run them consecutively according to the statute, so you're looking at 50 years to life …." As the majority opinion holds, the trial court's assumption was erroneous. In my view, the defendant is entitled to a fully and properly informed trial judge exercising the discretion

to impose consecutive as opposed to concurrent sentences.  The case should be remanded for that purpose.  (See, e.g., *McDaniels, supra,* 22 Cal.App.5th at pp. 425-428.)

I express no opinion as to how the court should exercise that discretion and would otherwise affirm.


SNAUFFER, J.