Filed 9/25/24  P. v. Sanchez CA5
Opinion following transfer from Supreme Court

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>FRANCISCO SANCHEZ,<br><br>Defendant and Appellant. | F077527<br><br>(Super. Ct. No. SF018769A)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Brian M. McNamara, Judge.

Carlo Andreani, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Kari Ricci Mueller, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Hill, P. J., Peña, J. and Smith, J.

**INTRODUCTION**

Appellant Francisco Sanchez was convicted by jury of two counts of committing a lewd and lascivious act with a child under the age of 14 (Pen. Code,[1] § 288, subd. (a).) In addition, the jury found that Sanchez had committed the offense against multiple victims. (§ 667.61, subd. (e)(4).) Sanchez was sentenced to an aggregate term of 50 years to life in state prison.

We affirmed Sanchez's conviction on direct appeal. (See *People v. Sanchez* (Mar. 17, 2022, F077527) [nonpub. opn.].) Sanchez filed a petition for review, which was granted. Following our Supreme Court's decision in *In re Vaquera* (2024) 15 Cal.5th 706 (*Vaquera*), the high court transferred this case back to us with directions to vacate our decision and reconsider the cause in light of *Vaquera*. The parties filed supplemental briefs, which we have considered.

Sanchez contends, and the Attorney General concedes, that he is entitled to resentencing. We agree that Sanchez's sentence must be reversed in light of our Supreme Court's decision in *Vaquera*, which makes clear that the charging instrument here was insufficient to put Sanchez on notice that the prosecutor was seeking imposition of a prison term of 25 years to life under subdivision (j)(2) of section 667.61 on both of the counts upon which Sanchez was convicted.[2] Sanchez further contends that he must be

---

[1] All further defined statutory citations are to the Penal Code unless otherwise indicated.

[2] Section 667.61, subdivision (j)(2) provides the following: "A person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e), upon a victim who is a child under 14 years of age, shall be punished by imprisonment in the state prison for 25 years to life."

Here, Sanchez was accused (and subsequently convicted) of committing two counts of a lewd and lascivious act with a child under the age of 14 years (§ 288, subd. (a)), an offense specified in subdivision (c) of section 667.61 (see *id*. subd. (c)(8)), against multiple victims, a circumstance specified in subdivision (e) of section 667.61 (see *id*. subd. (e)(4)). However, the information did not reference subdivision (e) of section 667.61 or the 25 years to life sentence mandated under this subdivision explicitly.

resentenced on count 2 pursuant to the sentencing triad under subdivision (a) of section 288. According to Sanchez, the jury failed to find true an aggravating circumstance on this count, specifically, the multiple victim circumstance (see § 667.61, subd. (e)(4)). We disagree.

We will remand the matter back to the lower court for a full resentencing. In all other respects, the judgment is affirmed.

## PROCEDURAL HISTORY

On October 31, 2016, the Kern County District Attorney's Office filed an information charging Sanchez with two counts of sexual intercourse or sodomy with a child under the age of 10 (§ 288.7, subd. (a); counts 1 & 3), and two counts of lewd and lascivious acts with a child under the age of 14 (§ 288, subd. (a); counts 2 & 4). As to counts 2 and 4, the information further alleged a multiple victim enhancement (§ 667.61, subd. (e)(4).)

On February 26, 2018, Sanchez's jury trial commenced.

On April 5, 2018, the jury returned guilty verdicts on counts 2 and 4 and found true the multiple victim enhancement allegations. The jury deadlocked on counts 1 and 3, and the court declared a mistrial as to those counts.

On May 17, 2018, the trial court sentenced Sanchez to an aggregate term of 50 years to life in state prison. Sanchez received a sentence of 25 years to life on count 2, plus a consecutive term of 25 years to life on count 4.

On June 15, 2022, the California Supreme Court granted a petition for review filed by Sanchez.

On May 15, 2024, the matter was transferred back to this court with directions to vacate our decision in light of *Vaquera, supra*, 15 Cal.5th 706. The parties submitted supplemental briefing to this court.

3.

## STATEMENT OF FACTS

The following statement of facts is derived from this court's unpublished opinion in *People v. Sanchez* (Mar. 17, 2022, F077527) [nonpub. opn.]).

### The Prosecution's Case

John Doe No. 1 (JD1) and John Doe No. 2 (JD2) were born in 2010 and 2006 respectively. On August 28, 2016, JD1 and JD2 independently told their mother, A.E., that Sanchez, her mother's roommate, had sexually abused them. JD1 specifically said Sanchez had "put his private part in – behind him." A.E. reported the disclosure to police.

On September 12, 2016, A.E. took JD1 and JD2 for forensic medical examinations, performed by forensic nurse Sara Cooper. During the examination, JD2 stated that Sanchez had put "his front privates into my butt" and that "it hurt." He also stated that he was scared of Sanchez.

Because the alleged abuse had occurred approximately two years prior, Cooper did not administer swabs for the perpetrator's DNA. Cooper made no findings as a result of the examinations. However, she explained that the absence of an injury does not mean sexual abuse did not occur. Approximately 95 percent of the forensic examinations conducted yielded negative results.

On October 4, 2016, law enforcement recorded a pretextual telephone call between A.E. and Sanchez. Sanchez repeatedly denied any wrongdoing and maintained his innocence. He also denied giving JD2 money in exchange for JD2's silence. A.E. confronted Sanchez about an occasion where he had allegedly abused one of the children in the bath, and Sanchez instructed him not to tell A.E. Sanchez denied any wrongdoing and told A.E. to have the children "tested."

A.E. also confronted Sanchez about a prior incident wherein he took her outside the City of Lost Hills to ostensibly get a hamburger. A.E. claimed Sanchez made sexual

4.

comments to her during the encounter and that he had touched her leg. A.E. was 15 years old at the time.

In response to further questioning, Sanchez claimed that JD1 and JD2 had fabricated the allegations. Sanchez told A.E. that if she had the "evidence in [her] hands [to] go for it." He warned her that she might be "lock[ed] up again" if she pursued the allegations against him.

### The Interrogation

On October 11, 2016, Kern County Sheriff's Senior Deputy Lovan interviewed Sanchez at the Delano police substation. Sergeant Ollague also participated in the interview and acted as a Spanish language interpreter between Lovan and Sanchez. At the beginning of the interrogation, Lovan confirmed that Sanchez had been transported to the police station voluntarily, that he was not placed in handcuffs, and that he was not under arrest. He also explained the door to the interview room was closed for privacy reasons, but that Sanchez could end the conversation at any time if he needed to.

During the interrogation, Sanchez initially claimed the pretextual phone call placed by A.E. was about how he was taking care of the children while A.E. was in jail. Sanchez explained he was from Chiapas, Mexico, and that he used to be in charge of a church youth group for older kids. He stated that he stays away from A.E. because he is a church person, and A.E. drinks and goes out with men. Sanchez claimed A.E. was intoxicated during the phone call so he eventually hung up on her.

When confronted with further details about the phone call, Sanchez admitted A.E. "was accusing [him] of something serious." Moments later, Lovan announced, "I think we're ready to go ahead and switch gears." He told Sanchez that he and another detective were listening to the phone call, that they knew what Sanchez had said during the call, and that he should start telling the truth. Lovan noticed that Sanchez appeared to be uncomfortable.

5.

Ollague added that because Sanchez was a church guy, he had to start telling the truth. Ollague stated that he and Lovan were going to try to remove the weight from Sanchez's shoulders. He further explained that they had already spoken with the children and that the children had already gone to the doctors. Ollague stated they also knew what Sanchez had done to A.E. when she was younger.

Sanchez initially denied sexually abusing JD2, but admitted the abuse almost immediately thereafter. Sanchez claimed that when JD2 was seven years old, JD2 told Sanchez that another boy had "poked" JD2 from behind. JD2 told Sanchez that he liked being poked by other children. JD2 would follow Sanchez around and ask Sanchez to poke him. Sanchez clarified that JD2 was asking Sanchez to have anal sex with him. Sanchez admitted that he "poked" JD2 on two separate occasions. Sanchez explained JD2 had pulled his own pants down and Sanchez had inserted his penis into JD2's anus. He did not feel his penis go all of the way inside of JD2's anus. JD2 screamed and Sanchez hugged him. Sanchez said, "Forgive me son, I don't know what I'm doing." JD2 was seven years old at the time of the incident.

The second time occurred when JD2 was nine years old. Sanchez stated that on this occasion, he touched the inside of JD2's buttocks with his penis.

Sanchez admitted that when JD1 was approximately four-and-a-half years old, he did the same thing to JD1. JD1 was playing in the water tubs where they washed vegetables. Sanchez removed JD1 from the tub, pulled down JD1's shorts, and inserted his penis into JD1's anus.

At the conclusion of the interrogation, Lovan asked Sanchez whether he had asked God for forgiveness for what he had done to the children. They gave Sanchez a notepad to write apology letters to JD1 and JD2. The letters mentioned "abuse" but did not specify how JD1 and JD2 had been abused. Sanchez was arrested at the end of the interrogation.

### JD1's Testimony

JD1 identified Sanchez as the defendant. JD1 stated that Sanchez had touched him in a bad way. JD1 did not recognize himself in a video wherein he was being interviewed by the forensic interviewer. However, he remembered telling the interviewer that Sanchez had "put his thing on top or inside of [his] butt."

### JD2's Testimony

JD2 was 11 years old at the time of Sanchez's trial. He lived at his grandmother's house for a period of time, where Sanchez lived as well. JD2 identified Sanchez as the defendant at trial.

JD2 testified that Sanchez had touched him with his front private part and his fingers. He explained that Sanchez had used "his front private part" to touch JD2's back part and that Sanchez's front private part went inside. This occurred approximately three times and it hurt JD2. Sanchez told JD2 not to tell anyone and he gave him money.

### Defense's Case

Sanchez waived his Fifth Amendment privilege against self-incrimination and testified at trial. He stated that he is from Chiapas, Mexico, a rural area, that he does not have much of an education, and he has never been convicted of any crimes. Sanchez claimed that he did not understand the Spanish that was spoken to him by the Spanish-speaking deputy. He further claimed he did not mean to confess to child molestation and denied ever molesting anyone. Sanchez stated JD1 and JD2 had lied to the forensic interviewer and during their testimony at trial.

## DISCUSSION

### I.    *Vaquera* Compels Reversal of Sanchez's Sentence

Sanchez contends that his sentence of 25 years to life imposed on both count 2 and 4 are unauthorized because the information failed to provide him with adequate notice that the prosecutor would seek the enhanced sentence of 25 years to life on both counts. The Attorney General concedes that Sanchez is entitled to resentencing relief. We agree

7.

and conclude that under *Vaquera*, the charging instrument here was insufficient to provide Sanchez with adequate notice of the fact that the prosecutor would seek the enhanced penalty of 25 years to life under subdivision (j)(2) of section 667.61.

### A.  The One Strike Law/Vaquera

The One Strike law establishes escalating indeterminate terms depending on the type and number of circumstances present, as identified and enumerated in section 667.61, subdivisions (d) and (e).  The One Strike law's sentencing structure not only punishes enumerated sex crimes committed under specific circumstances more harshly, those harsher punishments increase further depending on, for example, the age of the victim or whether there were multiple victims.

To be subjected to any of the penalties under the One Strike law, due process requires a defendant receive sufficient notice.  "[I]n addition to the statutory requirements that enhancement provisions be pleaded and proven, a defendant has a cognizable due process right to fair notice of the specific sentence enhancement allegations that will be invoked to increase punishment for his crimes." (*People v. Mancebo* (2002) 27 Cal.4th 735, 747.)  "This goes for sentence enhancements as well as substantive offenses:  A defendant has the 'right to fair notice of the specific sentence enhancement allegations that will be invoked to increase punishment for his crimes.' " (*People v. Anderson* (2020) 9 Cal.5th 946, 953.)  "To satisfy due process, it is sufficient for an accusatory pleading to provide the defendant fair notice of the particular One Strike sentence the prosecution is seeking and of which facts it intends to prove to support that sentence." (*Vaquera, supra*, 15 Cal.5th at p. 720, citing *Mancebo,* at pp. 753-754.)

Here, the information's One Strike allegations identified counts 2 and 4 (for lewd or lascivious acts against a child under the age of 14 years (§ 288, subd. (a)) as qualifying offenses under subdivision (c) of section 667.61.  The information further alleged the multiple-victim circumstance under subdivision (e)(4) of section 667.61.  This triggered application of the One Strike law.  However, these allegations did not reference

subdivision (j)(2) of section 667.61 specifically, nor did they make clear that the prosecutor was seeking a prison sentence of 25 years to life.

In *Vaquera*, our Supreme Court held that the prosecution's failure to provide sufficient notice of the specific One Strike sentence the prosecution is seeking and of the facts it intends to prove to support that sentence constitutes a due process fair notice violation. (*Vaquera, supra*, 15 Cal.5th at pp. 724-725.) There, the information's One Strike allegations referred to subdivisions (b) and (e)(4) of section 667.61, which "suggest[ed] the prosecution was seeking a sentence of 15 years to life based on the multiple victim circumstance." (*Vaquera*, at p. 721.)

However, given the underlying charges (§ 288, subd. (a)), which involved a victim under the age of 14 years, our Supreme Court explained the prosecution had a choice of "(1) not including a One Strike allegation in the information and seeking a determinate sentence of three, six, or eight years (§ 288, subd. (a)); (2) seeking 15 years to life based on the multiple victim circumstance alone (§ 667.61, subds. (b) & (e)(4)); or (3) seeking 25 years to life based on the additional circumstance that the victim of count 2 was under the age of 14 (*id*., subd. (j)(2))." (*Vaquera, supra*, 15 Cal.5th at p. 721.) The information was tailored in a manner that had suggested the prosecutor was aware of section 667.61, subdivision (j)(2)—a section added by Chelsea's Law—but, by omitting One Strike allegations related to section 667.61, subdivision (j)(2), had elected to seek sentencing under section 667.61, subdivision (b) instead. In context, "the pleading failed to inform [the defendant] of the prosecutor's election to seek the more stringent sentence and did not provide fair notice of his sentencing exposure." (*Vaquera*, at p. 723, fn. omitted.)

The information here suffers the same deficiencies as the charging instrument in *Vaquera*. The One Strike allegations referenced only the aggravating circumstance under section 661.67, subdivision (e)(4), i.e., the multiple victim circumstance. The allegations "did not specify that the prosecution was seeking 25 years to life on [any] count, cite to

9.

subdivision (j)(2)," nor did it "otherwise make clear that the prosecution was seeking a longer sentence based on the victim[s'] age[s]." (*Vaquera, supra*, 15 Cal.5th at p. 725.)

Because the One Strike allegation did not adequately inform Sanchez of the prosecutor's intent to invoke the One Strike law circumstance under which the trial court had sentenced him (see § 667.61, subd. (j)(2)), the allegation failed to provide him with fair notice. We must therefore reverse Sanchez's sentence.

Sanchez contends that the matter should be remanded back to the lower court for a full resentencing because the trial court retains the discretion to impose concurrent rather than consecutive sentences. The Attorney General submits that Sanchez must be resentenced to two consecutive terms of 15 years to life. We conclude that a full resentencing is required, at which, the superior court may impose the mandatory terms on counts 2 and 4 of 15 years to life, consecutively or concurrently.

Subdivision (i) of section 667.61 provides: "For any offense specified in paragraphs (1) to (7), inclusive, of subdivision (c), or in paragraphs (1) to (6), inclusive, of subdivision (n), the court shall impose a consecutive sentence for each offense that results in a conviction under this section if the crimes involve separate victims or involve the same victim on separate occasions as defined in subdivision (d) of Section 667.6." Although Sanchez's crimes involved separate victims, his convictions for lewd and lascivious acts (§ 288, subd. (a)) do not implicate section 667.61's mandatory sentencing provisions. By implication, this "leaves the decision to impose consecutive or concurrent terms to the sentencing court's discretion." (*People v. Valdez* (2011) 193 Cal.App.4th 1515, 1524.)

"[W]hen part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.' " (*People v. Buycks* (2018) 5 Cal.5th 857, 893; see *People v. Valenzuela* (2019) 7 Cal.5th 415, 424-425 ["the full resentencing rule allows a court to revisit all prior sentencing decisions when

10.

resentencing a defendant"].)  We will therefore reverse Sanchez's sentence and remand this matter back to the lower court for a full resentencing.

## II.     The Multiple Victim Enhancement Alleged as to Count 2

Sanchez further contends that the trial court must sentence him under the triad applicable for committing a lewd and lascivious act (see § 288, subd. (a)) on count 2 because the jury did not return a true finding as to the multiple victim allegation, which would otherwise mandate a prison term of 15 years to life (see § 667.61, subd. (b)). According to Sanchez, the jury erroneously found true the multiple victim allegation as to count 3 rather than count 2.  Although the verdict form does contain a typographical error, we agree with the Attorney General's assertion that the error is harmless when considered in the full context of the record.

### *Background*

Counts 1 and 3 charged Sanchez with the sodomy of John Does 1 and 2, who were 10 years old or younger (§ 288.7, subd. (a)).  Neither count alleged a One Strike aggravating circumstance.

Counts 2 and 4 charged Sanchez with lewd and lascivious acts against John Does 1 and 2, both of whom were under the age of 14 (§ 288, subd. (a)).  Both count 2 and 4 alleged a multiple victim allegation under the One Strike law (§ 667.61, subds. (c)(8), (e)(4)).

Consistent with the information, the trial court instructed the jury at the conclusion of Sanchez's trial, that if it found Sanchez guilty on counts 2 and 4, it would also need to decide whether the prosecutor had proven, beyond a reasonable doubt, that the crime was committed against more than one victim.  And during the parties' comments in closing argument, the prosecutor confirmed that the multiple victim circumstance was alleged as to counts 2 and 4.

During deliberations, the jury foreperson submitted a question to the court, requesting clarification of whether the multiple victim allegation applied to count 2 or

11.

count 3.  The court responded that it applied to count 2.  Less than 10 minutes later, the jury informed the court that it had reached a verdict.

Based upon this evidence, it is abundantly clear that the jury recognized that the verdict form contained a typographical error, that it had intended to find Sanchez guilty on counts 2 and 4, and that it found true the multiple victim circumstance with respect to these counts.  We are confident, beyond a reasonable doubt, that the typographical error on the verdict form was not prejudicial under the circumstances.  " '[T]echinical defects in a verdict may be disregarded if the jury's intent to convict of a specified offense within the charges is unmistakably clear, and the accused's substantial rights suffered no prejudice.' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)  We reject Sanchez's assertion to the contrary.

## DISPOSITION

The sentence is reversed and the matter remanded for full resentencing.  In all other respects, the judgment is affirmed.